THE CAROLINA CENTRAL RAILROAD COMPANY v. JOHN C. McCASKILL.

*Eminent Domain—Railroad Companies—Right of Way—Statute of Limitations—Charters—Estoppel.*

1. A Railroad Company has the right to enter upon and take possession of land before payment to the owner, which is needed in the building of its road, when it is authorized by its charter to do so.

2. Where a remedy is given to the land owner in the charter of the company, for getting compensation for land taken for the use of the corporation under its charter, the landowner must pursue this remedy, as the statutory remedy, by implication, takes away that at common law.

3. A stipulation in the charter of a railroad corporation, that all claims for damages for land taken by the corporation, must be made within two years, is a positive statute of limitations, and bars all claims not made within that time, when the parties are *sui juris.*

4. Where the charter of a railroad corporation provided, that if the owner did not apply within two years to have the damage assessed, caused by the use and occupancy of land taken by the corporation, they should forever be barred from recovering said land ; *It was held,* that the presumption of a conveyance arose from the act of taking possession and building the road and the owner's failure within the two years to take steps to have his damages ascertained.

5. No presumption of abandonment or of a grant, and no statute of limitation, runs against a railroad company by the adverse occupation of any of the land condemned or otherwise obtained by them for the purposes of the road.

6. Mere silence while a trespasser is improving real estate as if it was his own, while it may sustain a claim for the value of such improvements when made in good faith, cannot be allowed to transfer the property itself to such trespasser.

7. Where the charter provided that the title to condemned land should remain in the corporation as long as it was used by such corporation, but when it ceased to be so used, it should revert; *It was held,* that under the charter, the corporation was not required to use every part and parcel of the condemned land at once, and a permissive use of a portion of such land, does not deprive the corporation of the right to take possession of the land, when needed for purposes of the corporation.

8. A railrod corporation, having the right to use land, or a right of way over land, may maintain an action for its possession.

(*Railroad Co.* v. *Davis*, 2 Dev. & Bat., 451 ; *McIntire* v. *The Railroad Co.*, 67 N. C., 278 ; *Johnston* v. *Rankin*, 76 N. C., 550 ; *Phifer* v. *The Railroad Co.*, 72 N. C., 433 ; *State* v. *McIver*, 88 N. C., 686 ; *Vinson* v. *The Railroad Co.*, 74 N. C., 510 ; *Holmes* v. *Crowell*, 73 N. C., 613 ; *Exum* v. *Cogdell*, 74 N. C., 139 ; *Mason* v. *Williams*, 66 N. C·, 564 ; *Melvin Ballard*, 82 N. C., 33, cited and approved).

CIVIL ACTION for the recovery of land, tried before *MacRae*, *Judge*, and a jury, at Fall Term, 1885, of the Superior Court of ROBESON county.

The Wilmington and Charlotte Railroad Company, whose corporate name was changed by an amendatory enactment, ratified immediately thereafter, into that of the Wilmington, Charlotte and Rutherford Railroad Company, was formed and organized under an act of the General Assembly, passed at the session of 1854–'55, ch. 225, for the construction of a railroad communication between Wilmington and Rutherfordton, its terminal points, passing by Charlotte.

Section 24 provides, that said company may purchase, have, and hold in fee or for a term of years, any land, tenements, or hereditaments, which may be necessary for said road, or the appurtenances thereof, or for the erection of depositories, storehouses, houses for the officers, servants or agents of the company, or for workshops or foundaries to be used for said company, or for procuring stone, or other materials, necessary to the construction of said road, or for effecting transportation thereon, and for no other purpose whatever.

Section 26 prescribes the mode of condemning and valuing any lands or right of way demanded by the company for the purpose of construction, in the absence of any agreement as to the value, by the appointment of commissioners, from whose action the owner may appeal to the Superior Court.

Section 27 extends the company's right of condemnation, to one hundred feet on each side of the main track, measuring from the centre of the same, unless in case of deep cuts and fillings, when more may be taken, and for additional land, not exceeding two acres, for the construction and building of depots, shops, &c.

Section 28 is in these words:

"That in the absence of any contract or contracts in relation to the land through which said road, or any of its branches, may pass, signed by the owner thereof, or his agent, or any claimant, or person in possession thereof, it shall be presumed

that the land over which the said road, or any of its branches, may be constructed, together with a space of one hundred feet on each side of the said road, has been granted to said company by the owner or owners thereof; and the said company shall have good right and title thereto, and shall have, hold and enjoy the same, so long as the same shall be used for the purpose of said road, and no longer, unless the person or persons owning the land at the time that part of the said road was finished, or those claiming under him, her or them, shall apply for an assessment of the value of said lands, as hereinbefore directed, within two years next after that part of said road, which may be on said land, was finished; and in case the said owner or owners, or those claiming under him, her or them, shall not apply within two years next after the said part was finished, he, she, or they, shall forever be barred from recovering said land, or having any assessment or compensation therefor; *provided,* that nothing herein contained, shall affect the rights of *feme coverts* or infants, until two years after the removal of their respective disabilities."

Under this charter, the work of building the road progressed, and in April, 1861, the track of the road was completed at the place known as Shoe Heel, whereof the present controversy has arisen. There does not appear to have been any contract for the purchase of this part of the territory traversed by the railway, nor any proceeding instituted for its condemnation and assessment of value.

The road continued to be operated, and being under mortgage, proceedings for foreclosure and sale were instituted in the Superior Court of New Hanover county, resulting in a decree and sale.

The General Assembly, at the session in 1872–'73, incorporated the Carolina Central Railway Company, conferring very similar franchises and privileges, and in express terms authorized it to purchase the franchise and property of the former corporation, at the foreclosure, or any other sale that might be made,

and that upon such foreclosure, it should thenceforth "have, hold, possess, and be entitled to, the said railroad, extending from Wilmington to Rutherfordton, and all its contracts, franchises, rights, privileges and immunities; and all the estate of every description, real and personal, belonging to the said Wilmington, Charlotte and Rutherford Railroad, and by such purchase, the company hereby incorporated, shall acquire all the rights, privileges and immunities conferred on the Wilmington, Charlotte and Rutherford Railroad Company, by its charter, and amendments made thereto." Acts 1872–'73, ch. 75, §15.

At the same session, a general act was passed, regulating "mortgages by corporations, and sale under the same," which conferred upon purchasers at such sales, corporate powers, and when the mortgage deed was sufficiently comprehensive, "not only the works and property of the company, as they were at the time of making the deed of trust or mortgage, but any works which the company may, after that time, and before the sale, have constructed, and all other property of which it may be possessed at the time of the sale, other than debts due it." Acts 1872–'73, ch. 131, §1.

It is further provided, that "the corporation created by, or in consequence of such sale and conveyance, shall succeed to all such franchises, rights and privileges, and perform all such duties, as would have been, or should have been, performed by the first Company, but for such sale and conveyance, except debts due it." §2.

On January 18th, 1881, was passed an act, "to perfect the organization of the Carolina Central Railway Company," the first section of which is as follows: "That the Carolina Central Railway Company, a corporation created under and by virtue of an act, ratified the 1st day of March, 1873, entitled, "An act to regulate mortgages by corporations and sales under the same, and the grantee in a deed executed the 25th day of June, 1880, by Nathan A. Steadman, Jr., and Junius Davis, commissioners

appointed by a decree of the Superior Court of New Hanover county, to sell the property, rights and franchises, of the Carolina Central Railway Company, and to make title to the same, is hereby declared to be a lawfully organized corporation, succeeding to, and legally possessed of, all the rights, powers, privileges and franchises, which were owned and possessed by the former corporation, the Carolina Central Railway Company, on and prior to the day of said sale, to-wit, the 31st day of May, 1880." Acts 1881, ch. 5.

This brief history of legislative action, is sufficient to show the transmission to the plaintiff, the third corporate organization in the series, of all the estate, interest, rights, property and franchises, except debts due it, bestowed upon, or acquired by, the first, the Wilmington, Charlotte and Rutherford Railroad Company, through the second corporation, whose name differs from the present, only by a change of the word "Railway," to "Railroad," in the corporate name.

It is conceded that the premises described and claimed in the complaint, and for the recovery of the possession of which the present action is prosecuted, are within 100 feet of the track of the road, and that the defendant occupies the same, or a part thereof.

This was part of a large tract, whereon one Robert Hughes resided when the road was located, and up to 1861, or later. It is part of a grant of 90,000 acres issued in 1795, to David Allison.

Robert Hughes has not been heard from since the close of the civil war.

The disputed territory was sold under execution against one John Patterson, to Giles Leitch, who, dying intestate, the defendant acquired his title from Archy Leitch, and Mary Robinson, his heirs-at-law, by deeds executed in May and June, 1883.

There was a judgment for the plaintiff, and the defendant appealed.

*Messrs. Platt D. Walker* and *John D. Shaw,* (*Mr. A. Burwell* was with them on the brief), for the plaintiff.

*Messrs. Frank McNeil, William Black* and *W. P. Bynum,* for the defendant.

SMITH, C. J. (after stating the facts).    It is not material to inquire into the source from which the defendant derives his title, beyond his mere occupancy, since the plaintiff must establish its right to the possession of the premises, in order to a judgment of ejection.    In whomsoever the estate was vested, there being no suggestion that they were under disabilities, it was, under the statute, as soon as the road was constructed and *toties quoties* as it progressed towards conclusion, transferred to the corporation, of the required width of 100 feet on either side, to be paid for as directed, when no written contract has been entered into for the purchase.    In such case, the inaction of the owner in enforcing his demand for compensation for land taken and appropriated after the finishing of the construction of the road thereon, for the space of two years thereafter, raises, under the statute, a presumption of a conveyance and of satisfaction, and hence becomes a bar to an assertion by legal process, of such claim.

These conditions unite in this case, and not only does the title vest in the corporation, but the remedy given the owner, under no disability, has been lost by lapse of time.

The right of a railroad corporation to enter upon and take possession of land, needed in the building of the road, before payment to the owner, when authorized by the power which exercises the right of eminent domain, is sanctioned by the ruling in *Raleigh & Gaston R. R. Co.* v. *Davis,* 2 Dev. & Bat., 451, as necessary to the efficient prosecution of these great works of internal improvement, and, whatever may be the adjudications elsewhere, has been accepted law in this State.    And so the remedy of attaining compensation, which the statute provides, must alone be pursued for that purpose.    *McIntire* v. *Western*

*N. C. R. R. Co.*, 67 N. C., 278; *Johnson* v. *Rankin*, 70 N. C., 550; *Phifer* v. *Railroad*, 72 N. C., 433; *State* v. *McIver*, 88 N. C., 686; Pierce on Railroads, 163.

"If the actual payment of the compensation were required," says the author last quoted, "to precede an entry for construction, the entry would be delayed until the amount, when not agreed upon, had been finally determined by legal proceedings, and such delay would often result in serious detriment to public interests."

And so Mr. Justice RODMAN indicates the rule, in *McIntire* v. *W. N. C. Rairroad Co., supra*, thus : "If the officers of the coporation cannot enter on lands and make surveys without a trespass, they would never locate the road.   And if the road were located, and its construction delayed until the damages to all the land owners on the route were asceatained under the act, the delay would be indefinite, and of no benefit to any one.  *  *  The act intended to allow the company to enter and construct its road at once, leaving the question of damages, if the parties could not agree on them, to be settled afterwards.  The company was not obliged to initiate proceedings.   It is not obliged to know *that the owner claims damages*, until he claims them in the mode provided."

The provision in the charter granted to the predecessor, in February, 1881, is a transcript of a similar section, (29), contained in the act of 1848–'49, ch. 82, incorporating the North Carolina Railroad Company, and this latter has been recognized and enforced as valid, by express adjudication in *Vinson* v. *N. C. R. R. Co.*, 74 N. C., 510.   In this case, proceedings were instituted by the company against the owner in 1865, a year after the road had been finished.   It depended in the Superior Court of Johnston, until Spring Term, 1875, when the counsel for the company entered a dismissal, without prejudice, and without the knowledge of the defendant's counsel.   A petition was filed by the plaintiff Vinson, to recover damages on account of the construction of the road over his land.   The Court held, and so declared, in reference to the recited section of the incor-

porating act: "It is a postive statute of limitations, and it clearly bars the plaintiff's action, unless it be saved by the special circumstances relied upon," &c., and, adjudging that they could be allowed no such effect, the petition was dismissed at petitioner's cost. We refer to the case, only as showing a judicial determination of the efficacy and operation of the clause under which the plaintiff claims its proprietary right to the land in dispute, without reference to some of its other features.

We proceed now to consider the grounds as contained in the series of instructions asked, on which the recovery is resisted by the defendant, and these are:

I. The presumption is not raised under the Act, when there is an adverse holding by another, and if it is, it is rebuttable and has been rebutted.

The presumption of the conveyance arises from the company's act in taking possession and building the railway, when in the absence of a contract, the owner fails to take steps, for two years after it has been completed, for recovering compensation. It springs out of these concurring facts, and is independent of inferences which a jury may draw from them. If the grant issued, it would not be more effective in passing the owenr's title and estate. Thus vesting, it remains in the company as long as the road is operated, of the specified breadth, unaffected by the ordinary rules in reference to repelling presumptions, by virtue of §23, chapter 65, of the Revised Code, brought forward in The Code, §150. This declares, that "no railroad, plank-road, turnpike or canal company, shall be *barred of, or presumed to have conveyed,* any real estate, right of way, easement, lease-hold, or other interest in the soil, which may have been condemned *or otherwise obtained for its use, as a right of way, depot station-house, or place of landing, by any statute of limitation, or by occupation of the same by any person whatever."*

This is the substance of the first, fourth and sixth instruction demanded, to which the statute furnishes a sufficient answer.

48

II. The fifth instruction asserts an estoppel upon the company, growing out of the knowledge by its officers, of the erection of the house by the defendant, while it was being built, and assent implied by that silence and acquiesence. This objection is met by the cases of *Holmes* v. *Crowell*, 73 N. C., 613; *Exum* v. *Cogdell*, 74 N. C., 139; *Mason* v. *Williams*, 66 N. C., 564; *Melvin* v. *Ballard*, 82 N. C., 33; Big. Est., 480. Mere silence while a trespasser is improving real estate as if it were his own, while it may sustain a claim for the value of such improvements made in good faith, cannot be allowed to transfer the property itself to the usurping occupant.

III. What has already been said, disposes of the matter of the instructions numbered 8 and 9.

IV. The 7th, 10th and 11th instructions involve the proposition, that the land sued for, is no longer needed by the company, and reverts under the charter.

We concur in the answer given in the charge, that the statute does not require the occupation and direct use of every foot of the condemned area, for building, embankments and the like, but preserves the property in the company, so long as the road runs over the land and is operated by the company. A permissive use of part of it by another, when no present inconvenience results to the company, is not a surrender of rights of property, and, indeed, to expel an occupant under such circumstances, would be a needless and uncalled for injury. This may suspend, but does not abridge the right of the company to demand restoration, when the interests of the road may require its use.

V. The constitutionality of the act has been considered, and it rests upon well considered adjudications that we do not feel at liberty to disturb.

We do not find error in the refusal of the Court to give the instructions proposed by the defendant, nor in those given to the jury.

It is manifest, that whether the company has the estate in the land, or the right of way over the land, to which possession

is indispensible, it is entitled to recover the possession, and for this the action can be maintained. The right of possession is, and must be exclusive. Pierce on Railroads, 159–402, except at lawful crossings.

There is no error, and the judgment must be affirmed.

No error.                                                    Affirmed.