DARGAN v. CAROLINA CENTRAL RAILROAD CO.

(Filed December 20, 1902.)

1. EMINENT DOMAIN—*Right of Way—Railroads—Acts 1854-'55, Chap. 225—Acts 1872-'73, Chap. 75.*

Where the charter of a railroad company authorizes it to procure a right of way by purchase or condemnation, any subsequent use by the owner of land condemned thereunder is subject to the after necessity of the use of the land by the company for the purposes granted under the charter.

2. EMINENT DOMAIN—*Right of Way—Damages—Remedies.*

Where the charter of a railroad company provides a way of redress for damages for land taken under the power of eminent domain, the statutory remedy supersedes the common law remedy.

3. EMINENT DOMAIN—*Right of Way—Limitations of Actions—Acts 1854-'55, Chap. 225—Acts 1872-'73, Chap. 75—Married Women.*

Where the charter of a railroad company provides that an action for damages for land taken for right of way shall be brought within two years from the completion of the road, a husband against whom the statute had run, by conveying the land to his wife, does not give her a cause of action.

DOUGLAS, J., dissenting.

ACTION by Milton Dargan and Nora Dargan, his wife, against the Carolina Central Railroad Company, heard by Judge *W. S. O'B. Robinson* and a jury, at January Term, 1901, of the Superior Court of UNION County. From a judgment for the defendant, the plaintiffs' appealed.

*Redwine & Stack,* for the plaintiffs.
*Adams & Jerome,* and *J. D. Shaw,* for the defendant.

MONTGOMERY, J.   The defendant, the Carolina Central Railway Company, was chartered in 1873, under Chap. 75

of the Acts of 1872-73. By the provisions of the act of in-
corporation, and also under chapter 225 of the Acts of
1854-'55, the defendant being the purchaser of the Wilming-
ton, Charlotte and Rutherford Railroad, the defendant was
authorized to procure a right of way by either purchase or
proceedings in condemnation. In both acts of Assembly it
was also provided that in the absence of any contract in rela-
tion to the land through which the railway might pass, it
would be presumed that the land over which the road might
be constructed, together with a space of 100 feet on each side
of the center of the railway, had been granted to the company
by the owners, and that unless the owner at the time that part
of the railway which might occupy the land, or those claim-
ing under him, was finished, should apply for an assessment
of the value of the land so taken within two years next after
that part of the road which might be on the land was finished,
the owner, or those claiming under him, should be forever
barred from recovering the land or having any assessment or
compensation therefor. By section 9 of the Act of 1872-'73,
the dwelling house and burial ground were exempted from
invasion on the part of the railway company, without the
consent of the owner or the order of the Superior Court; and
by the Act of 1854-'55, the exemption was the residence and
*garden.* The evidence in this case shows that the land which
was actually taken possession of by the defendant in 1892
or 1893, was within 100 feet from the center of the track,
and was then used as a garden by the plaintiffs; and it was
admitted by the plaintiffs that the garden which is the subject
matter of the dispute, was used for railroad purposes and was
necessary for the conducting of its business and the enjoy-
ment of its rights under its charter. But it was not attempted
to be shown that the land was used as a garden when the road
was finished upon the lands of the plaintiffs. It is imma-
terial, therefore, the constructive possession of the whole of

the strip of land by the completing of the railroad track being
in the defendant, whether the actual possession in 1892 or
1893 was under Act of 1854-'55, or the Act of 1872-'73,
as the land was not, at the time of the construction of the
track, used either as a garden or as a burial ground.    The
use made of the land by the plaintiffs subsequent to the com-
pletion of the railroad track was subject to the after necessity
of the use of the whole hundred feet, including the part which
is the subject of this action, wherever it became necessary to
be so used by the company for the purposes granted under the
charter.    When it became necessary for the defendant to take
the land for the purposes averred in the answer and admitted
by the plaintiffs, that is, for the purpose of conducting the de-
fendant's business, it was authorized to do so.    *Sturgeon v.
Railroad,* 120 N. C., 225 ; *Shields v. R. Co.,* 129 N. C., 1.

The plaintiffs, in the brief of their counsel, contended that
if the plaintiffs were not entitled to recover the land, they
ought to be allowed compensation for the value of the land,
as under condemnation proceedings. The complaint set forth
simply the cause of action in the nature of ejectment, but
there was a prayer for general relief.    We think, however,
that as there was a provision in both the acts referred to con-
templating the assessment of damages, and furnishing the
means of assessment, that remedy must be pursued, and that
the plaintiffs were not entitled to it in the present action.  In
cases involving the right of eminent domain, the common law
remedy is superseded by the statutory remedy, and aggrieved
parties are compelled to seek redress under provisions of the
statute.    *McIntire v. Railroad,* 67 N. C., 278 ; *Land v. Rail-
road,* 107 N. C., 72.

The provision for the assessment in the way of compensa-
tion for lands taken by the defendant under the acts referred
to was by application to the Clerk of the Superior Court of
the county in which the land is situated, and the appointment

of commissioners for that purpose. It is better for us to say further, that the plaintiffs in this case can not recover in any form of procedure. Under both of the acts referred to, married women and infants are not affected until two years after the removal of their respective disabilities; but when the railroad was completed through the land, the land was the property of the husband of the *feme* plaintiff, and his right to have assessment as for compensation was barred at the end of two years from the completion of the road. His conveyance to his wife, the *feme* plaintiff, was of date of 1893, long after the road was completed.

The ruling of his Honor which resulted in a nonsuit was proper, as was the judgment.

No Error.

DOUGLAS, J., dissenting. This is an action for the recovery of real estate and damages for its detention. The plaintiffs, in support of their title, offered in evidence a deed from J. S. Helms to Milton Dargan, executed January 6, 1871, and registered on the 28th December, 1885, in Book 16, page 677; and also a deed executed by Milton Dargan to Nora Dargan, his wife, on the 7th day of March, 1893, and registered on the 9th day of March, 1893, in the office of the Register of Deeds of Union County, in Book 23, page 685.

The plaintiffs introduced witnesses tending to prove that the *feme* plaintiff had been married to her co-plaintiff for thirty years; that she and her husband had been in possession of the lot described in the complaint, claiming the lot under the deeds, until the erection of a stock pen by the defendant, which, it was admitted by the plaintiffs, was within one hundred feet of the railroad track of the defendant; that plaintiffs were in the actual possession of said lot, under known and visible boundaries, at the time of the entry of defendant, and forbid the entry; that the defendant took possession of the lot in 1893, about the last of the year; that the piece of

land was used as a garden and orchard at the time the defendant entered and took actual possession of the lot by the erection of the stock pen, and that the rental value of the lot was some fifteen to twenty dollars per year.

The plaintiffs offered in evidence the Acts of the General Assembly passed in 1854-'55, Chap. 225; the Public Laws of 1871-'72, Chap. 131, and the Laws of North Carolina, 1872-'73, Chap. 75, and the Acts of 1881, Chap. 5. The plaintiffs also introduced the summons in the case.

There was evidence offered by the defendant tending to show that the defendant took possession of the lot, which is the land described in the complaint, and wholly within the right of way of defendant, in December, 1892; that it was necessary for the defendant to use the lot for the purpose of erecting a stock pen, where horses and other animals could be unloaded and fed, or loaded on its trains, and that this place was especially suited for that purpose; that the stock pen was erected in December, on the right of way; that plaintiff admitted on the trial that the stock pen was on the right of way; that the rental value of the land was five dollars per year.

Upon the admission of plaintiffs that the stock pen was within one hundred feet of the railroad track, and was used for railroad purposes necessary for the proper enjoyment of its rights under its charter, and that the lot sought to be recovered by the plaintiffs is that covered by the stock pen, his Honor intimated an opinion that plaintiffs were not entitled to recover in this action, and plaintiffs submitted to a nonsuit and appealed. Judgment of nonsuit as set out in the record, to which the defendant excepted and appealed to the Supreme Court.

The complaint is in the nature of ejectment. The answer denies the essential articles of the complaint, and proceeds as follows:

"The defendant further answering, and for a further defence alleges:

"1. That it is admitted that the defendant is in the possession of so much of the said lot of land described in article two as lies within one hundred feet of the center of the track of the defendant, and has been in possession of the same, exercising acts of ownership on it as its right of way, claiming it and using it as necessary to the operation of defendant's railroad for more than five years before the commencement of this action, and since the defendant entered upon said 100 feet of said land for the purpose of constructing its road, and the plaintiff ought not to be allowed to maintain this action, and the same is barred by the statute of limitations.

"2. That the defendant, under its charter, is entitled to 100 feet on each side of its track from the center thereof, for right of way, and has been in the use, occupancy and possession of so much of the land described in article two of complaint as is situated within said 100 feet on the south side of its track, using, occupying and possessing the same as its right of way for more than five years since defendant entered upon said land for the purpose of constructing its road, and for more than five years before the commencement of this action, and for more than two years since defendant's road was in operation, and more than two years before the commencement of this action, and the same is barred by the statute of limitations.

"3. That more than five years had elapsed before the commencement of this action after plaintiffs' cause of action accrued, and same is barred by the statute of limitations.

"4. That more than two years had elapsed before the commencement of this action after plaintiffs' cause of (action) accrued, and the same is barred by the statute of limitations."

Upon the foregoing facts, I am of the following opinion:

This is an action for the recovery of land, but it appears from the argument that the real question at issue is, whether the defendant shall be permitted to keep the land without

compensation. The defendant company was incorporated under chapter 75 of the Laws of 1872-'73, and claims also as the successor by purchase of the Wilmington, Charlotte and Rutherford Railroad Company, incorporated under chapter 225, of the Laws 1854-'55. It is well settled that private property can not be taken, directly or indirectly, even for a public purpose, without just compensation. *R. Co. v. Davis,* 19 N. C., 451; *State v. Glenn,* 52 N. C., 321; *Cornelius v. Glenn, Ibid.,* 512; *Johnston v. Rankin,* 70 N. C., 550; *Staton v. R. Co.,* 111 N. C., 278; 17 L. R. A., 838. It has been expressly held that, under the Fourteenth Amendment to the Constitution of the United States, a State can not appropriate private property to public use without compensation. *C. B. and Q. R. Co. v. Chicago,* 166 U. S., 212.

It is equally well settled that the denial of an *adequate* remedy for enforcing the right is a denial of the right itself, and the adequacy of the remedy must be determined by its practical results. In *Dargan v. R. Co.,* 113 N. C., 596, this Court has said: "The right of the State to take private property rests upon the ground that there is public necessity for such appropriation, and can be exercised only where the law provides the means of giving *adequate* compensation to the owner." That case, decided in favor of the plaintiff, was between the same parties as the case at bar, and construed the same statutes. In *Henderson v. Mayor,* 92 U. S., 259, the Court says: "In whatever language the statute may be framed, its purpose and its constitutional validity must be determined by its natural and reasonable effect." In *Simon v. Craft,* 182 U. S., 427, the Court says: "The essential elements of due process of law are notice and opportunity to defend. In determining whether such rights were denied, we are governed by the substance of things and not by mere form." In *Railroad v. Chicago, supra,* the Court says, on page 236: "The mere form of the proceeding instituted

against the owner, even if he be admitted to defend, can not convert the process used into due process of law, if the necessary result be to deprive him of his property without compensation." In *Brickett v. Aqueduct Co.,* 142 Mass., 394, the Court says that "A statute which attempts to authorize the appropriation of private property for public uses, without making adequate provision for compensation, is unconstitutional and void."

As there is no contention that the plaintiffs have ever received any compensation for the land in suit, an affirmation of the judgment would have the effect of taking the land away from them, and giving it to the defendant against their will, and without just compensation. We would also deny to them the due process of law allowed as of common right to the citizen when suing a natural person. Before we can allow to a corporation this privilege of exemption from the ordinary law of the land, we must find, (1) that the statute gives the plaintiffs a remedy exclusive in terms or by direct implication; and (2) that such exclusive remedy is complete and adequate.

We are met at the threshold of this case by a difficulty appearing upon the fact of the record. While it was argued upon the provisions in the statutes of incorporation, these statutes are nowhere pleaded in the answer; and as they are private statutes, the defendant can not rely upon any special exemption therein contained. In *Durham v. R. Co.,* 108 N. C., 399, this Court says: "It is not questioned that private statutes must be pleaded (The Code, Sec. 264), and that they must be proved when they become necessary as evidence." The Code, Sec. 264, prescribes how they shall be pleaded, as follows: "In pleading a private statute or right derived therefrom, it shall be sufficient to refer to such statute by its title and the day of its ratification, and the Court shall thereupon take judicial notice thereof." 20 Pl. and Pr., 596.

This would determine the result of this appeal, but as the answer may be amended upon a new trial, we will proceed to discuss the statutes as if they had been pleaded.

The next question is, do the statutes provide a remedy, adequate and exclusive, to which the plaintiffs may resort to obtain just compensation for their land? The only provisions for condemnation proceedings that we can find in either act, are in section 26 of the Act of 1854-'55, and section 9 of the Act of 1872-'73, which are substantially similar. The material words of the latter section are as follows: "Sec. 9. That when any lands or rights of way may be *demanded* by said company, or *condemned,* * * * and for want of agreement as to the value thereof, or from any other cause, the same can not be or is not purchased from the owner or owners, the same may be taken at a valuation to be made by three commissioners, or a majority of them, to be appointed by the Clerk of the Superior Court of the county where some part of such land or right of way is situate: * * * *Provided,* that on any application for the appointment of commissioners under this section, it shall be made to appear to the satisfaction of the Court that at least ten days previous notice has been given by the *applicant* to the *owner* of the land so proposed to be condemned," etc. The italics in quoting these statutes are ours. The same section provides that "the proceedings of said commissioners, accompanied with a description of said land or right of way, shall be returned, under the hand and seal of the commissioners, to the Court from which the commission issued, there to remain a matter of record, and the lands or right of way so valued by said commissioners *shall thenceforth vest* in the said company as long as the same shall be used for purposes of said railway or branches, *whenever and so soon as the amount of said valuation may be paid or tendered."*

From these sections, it appears that (1) the right to demand

the appointment of such commissioners is given exclusively to the railroad company; (2) such commissioners can not be appointed until the land has been *demanded* or *condemned* by the railroad company (3) nor can they be appointed until after the said railroad company has given ten days notice to the owner of the land; (4) that the said land shall not *vest* even for the purposes of an easement, until its assessed value has been *paid or tendered* to the owner. None of these conditions precedent appear in the case at bar, and hence the land has never vested in the defendant. As the plaintiffs are given no remedy at all under the acts in question, they are entitled to the ordinary process of law. Mills on Eminent Domain, Sec. 88, says: "*While the statutory remedy is not complete, the common law remedy remains.* For an entry on land, or the taking or destruction of property of another, the common law gave the injured party the remedies of trespass, trespass on the case, or ejectment. These remedies gave the owner complete compensation for the invasion of his rights of property. The statutory remedy which is provided must be complete in ascertaining the damages and securing their payment, or the common law remedy may be pursued. The provision of a specific mode of ascertaining damages confers no right which did not exist before. The *omission* of a specific mode leaves the party his common law right. If the statute only proves a partial remedy, there is a remedy for the remainder at common law. The payment of damages must be secured; and if, after condemnation, there is a refusal to pay, trespass or ejectment, with *mesne* profits may be maintained." For each of these propositions, the learned author cites authorities of the highest respectability. See also Randolph on Em. Dom., Secs. 227, 228, 229, 230, 231; Lewis on Em. Dom., Secs. 364, 365, 366, 456; Enc. Pl. and Pr., 481, 486, 528, 544, 545, 623, and especially pages 691, 694, 715, 716; Black's Const. Law, Sec. 130; Cooley Const.

Lim., 449, 664, 665, 692; 4 Thomp. Corp., Secs. 5590 and 5621.

We come now to consider the effect of section 28 of the Act of 1854-'55, and section 11 of the Act of 1872-'73, which are substantially similar.    The latter section is as follows: "Sec. 11. That in the *absence of any contract* or contracts in relation to the land through which said railway or any part of its branches may pass (signed by the owner thereof or his agent, or some claimant or person in possession thereof, and which may be confirmed by the owner thereof), it shall be presumed that the land over which said road, or any of its branches, may be constructed, together with a space of 100 feet on each side of the center of said railway, and the additional space provided for in the foregoing section, has been granted to said company by the owner or owners thereof; and said company shall have good right and title thereto, and shall hold and enjoy the same *as long as the same shall be used for the purposes of said railway,* unless the person or persons owning the land at the time that part of said railway which may *occupy said land* was finished, or those claiming under him, her or them, shall apply for an assessment for the value of said lands as heretofore directed within two years next after that part of the road which may be on said land was finished, and in case the same owner or owners, or those claiming under him, her or them, shall not apply within two years next after the said part was finished, he, she or they shall forever be barred from recovering said land, or having any assessment or compensation therefor; but nothing herein contained shall affect the rights of *femes covert* or infants until two years after the removal of their respective disabilities."

We have seen that the acts do not give the owner of the land the right to have it assessed, but if we assume that they do so by *implication,* we must hold that such remedy is simply cumulative, and does not deprive the owner of his com-

mon law remedies. In other words, we can not, by *mere implication,* write into a statute words that exempt a corporation from the ordinary process of law.

But even supposing that this may be done, the statute must be at least reasonably construed; and it is evident from the face of the acts that such a presumption is intended to apply only to such land as is *occupied* by the said railroad. This is the word used, and its meaning is further illustrated by the provision that the railroad company "shall hold and enjoy the same as long as the same shall be used for the purposes of said railway." It is therefore evident that it was not intended that the two years statute of limitation should begin to run until after the railroad company had taken possession of the land. How can it be otherwise? As long as the plaintiffs remained in the undisturbed use and enjoyment of their land, what cause of action did they have? They could not bring trespass or ejectment, because no one had trespassed, and they themselves were in undisputed possession. They could not ask to have the value of the land assessed against the defendant, because the defendant had never "demanded" the land, and surely a man can not make a railroad company buy his land simply because it is within 100 feet of its track. The act does not require the defendant to condemn 100 feet on each side of its track, but simply fixes that as the maximum limit. Where land is valuable, it is highly probable that the company would not care to pay for more than it needed. It is well settled that no statute of limitation can run against the owner in possession. There must first be an ouster. In *Lewis v. Covington,* 130 N. C., 541, this Court says: "And the rule is, to ripen a colorable title into a good title, there must be such possession and acts of dominion by the colorable claimant as will make him liable to an action of ejectment. *This is said to be the test* (citing authorities). Suppose the defendant had been sued for the

possession of the land in dispute, the action would have failed, as it would have been necessary to show that the defendant was in the possession of the land sued for."

In the case at bar, suppose the defendant had been sued by the plaintiffs twenty years ago, it could have said, "If you sue me in ejectment, I am not in possession of your land; if you sue me for trespass, I have never been on your land; if you seek to make me pay for it, I do not want it." No action could have been maintained by the plaintiffs until the ouster in 1893, which, according to their testimony, was after the land was conveyed to the *feme* plaintiff. As she has constantly been under coverture, no statute of limitations has ever started to run against her.

There is another fatal defect. The act provides that such a presumption shall arise only in the absence of any contract in relation to the land. Such absence of contract is a condition precedent to the presumption, and must be averred and proved by the defendant before it can avail itself of any such presumption. This it has failed to do. If there was any such contract, it would have been in the possession of the defendant, who might have recorded it, have kept it, or have destroyed it. The last course would have best subserved its own interest. In any event, the defendant alone had the proof; and we can not say that it can remain silent, and take the plaintiff's land under a naked presumption founded upon an implication in a private statute that has never been pleaded.

There is another question that has neither been raised nor argued in this case. Section 3 of Article VIII, of the Constitution, provides that: "All corporations shall have the right to sue, and shall be subject to be sued, in all courts, *in like manner as natural persons.*" A decision of this question is not necessary to a determination of this appeal, but being of constitutional obligation, it is worthy of most serious consideration.