BARKER v. RAILROAD.

(Filed December 13, 1904).

1. RAILROADS—*Ejectment—Evidence—Const. N. C., Art. IV, sec. 8.*

> In ejectment for a strip of land adjacent to the railroad of the defendant, evidence of a charter granted in an adjoining state to a railroad of that state which afterward by consolidation became a part of the lessor of the defendant was admissible for the purpose of showing the history and original creation of defendant's lessor.

2. EMINENT DOMAIN—*Railroad—Ejectment—Evidence.*

> In ejectment against a railroad company, the act of the general assembly relating to the consolidation of a local railroad company with a company of an adjoining state—the consolidated company being the lessor of the defendant—is admissible, though the act confers no power to condemn land.

3. RAILROADS—*Mortgages—Foreclosure of Mortgages—Easement—The Code, sec. 697—Acts 1854, chap. 229.*

> On the foreclosure of a mortgage given by a railroad company, the purchaser takes the rights that the company had acquired in relation to its right of way under its charter.

4. LIMITATION OF ACTIONS—*Presumptions—Railroads.*

> Where a railroad company enters upon and constructs its track on land and the owner does not institute an action therefor within two years, the railroad will be presumed to have acquired an easement.

> Douglas, J., dissenting.

ACTION by T. G. Barker against the Southern Railway Company, heard by *Judge T. J. Shaw* and a jury, at May Term, 1904, of the Superior Court of HENDERSON County.

This was an action brought for the recovery of a strip of land described in the complaint as bounded by the main line of the Asheville and Spartanburg Railroad on the east, by

W. H. Ray on the north, by the street leading from Anderson avenue by the machine shops of the Henderson Lumber Company on the west, and by Henderson avenue on the south. The plaintiff showed a chain of title from the State to himself. The defendant admitted that it was in possession of the *locus in quo*. It was alleged that such possession was held by virtue of the lease from the Asheville and Spartanburg Railroad Company; that the road claimed the right of possession as and for a right of way; that possession of the land was taken by the grantee of the company for railroad purposes and the land is used and is necessary for the operation of the road; and that by virtue of such lease and possession, by the terms of the charter of its grantee, a right of way was acquired in and over the land.

The plaintiff located the land as described in the deed and complaint and it was shown that the land was used for railroad purposes to load and unload cars, and had been used for depot purposes since 1878-'79. The road was extended from Hendersonville to Asheville in 1880 and completed in 1886. The defendant introduced the charter (Laws 1854-'55, chap. 229), entitled "An Act to Incorporate the Greenville and French Broad Railroad Company." Section 11 of the act is as follows: "In the absence of any written contract between the company and any owner or owners of said land through which the said railroad may be constructed, in relation to said land, it shall be presumed that the land upon which the said railroad may be constructed, together with one hundred feet on each side of the center of said road, has been granted to said company by the owner or the owners thereof; and the said company shall have good right and title to the same, and shall have and hold and enjoy the same unto them and their successors so long as the same may be used only for the purposes of said road and no longer, unless the person or persons to whom any right or title to such land

\* \* \* descend or come, shall prosecute a suit for the same within two years next after the construction of such part or portion of said road as may be constructed upon the land of the person or persons so holding or acquiring such right to the title as aforesaid; and if any person or persons to whom the right or title to said lands, tenements or hereditaments belong, or shall hereafter descend or come, do not prosecute a suit for the same within two years next after the construction of the part of said road upon the land of the person or persons so having or acquiring said right or title as aforesaid, then he or they and all claiming under him or them shall be forever barred to recover the same."

(2) The defendant, under plaintiff's objection, introduced the Laws of South Carolina, Vol. 15, page 348, No. 274, entitled "An Act to Incorporate the Spartanburg and Asheville Railroad Company." Section 4 of said act conferred upon said corporation power to construct a railroad from Spartanburg, S. C., to the North Carolina line in the direction of Asheville." \* \* \* Plaintiff excepted.

(3) The defendant introduced chapter 27, Laws 1874-'77, entitled "An act to amend the charter of the Greenville and French Broad Railroad Company." The preamble of said act is as follows: "Whereas, the Greenville and French Broad Railroad Company of North Carolina and the Spartanburg and Asheville Railroad Company of South Carolina have, in pursuance of the laws of North and South Carolina, been consolidated into one company; and whereas, it is deemed expedient to repeal some of the restrictions contained in the charter of the Greenville and French Broad Railroad Company." The plaintiff objected to this statute for the reason that it does not appear that there was in fact any consolidation of the two companies in the act, and because no power is given in the act to the Asheville and Spartanburg Railroad Company to condemn land, and no corporate rights are given

whatever. The objection was overruled and the plaintiff excepted.

A certified copy from the records of Buncombe County of a deed in trust from the Spartanburg and Asheville Railroad Company to Inman & Cleveland. This deed has been registered in Henderson County from this certified copy. The plaintiff objected to the deed because it appears to be a copy and was ordered to registration and was registered in Henderson County from a copy from the records of Buncombe County, and because it was not properly admitted to probate and registered in Henderson County. The objection was overruled and the plaintiff excepted.

The defendant next offered a certified copy of the record in the case of *Tomay v. Spartanburg and Asheville Railroad Co. and others* in the Circuit Court of the United States, in which the mortgage deed was foreclosed and the property sold. The deed from Inman & Cleveland, trustees, to the Asheville and Spartanburg Railroad Company conveying all of the property rights  *  *  *  of said company, bearing date April 4, 1881, and duly registered. The defendant rested.

The plaintiff introduced Book 37, p. 162, of the record of deeds of Henderson County, showing the deed from T. G. Barker (plaintiff) to the Spartanburg and Asheville Railroad Company, conveying land known as the "stock-lot" on the side of the railroad track, opposite the land in controversy. This land was conveyed to the company for use as a "stock-lot" and other railroad purposes. The plaintiff showed the location of the "stock-lot,"  *  *  *  and at the conclusion of the testimony his Honor directed the jury to answer the first issue—"Is the plaintiff the owner and entitled to the land in controversy set out in the complaint? 'Yes,' subject to the right of way of the Asheville and Spartanburg Railroad Company, as provided in the charter of the Green-

BARKER *v.* RAILROAD.

ville and French Broad Railroad Company as contained in chapter 229, Acts 1854-'55." To the second issue, that plaintiff was not entitled to the possession, plaintiff excepted. From a judgment upon the verdict the plaintiff appealed.

*Smith & Valentine,* for the plaintiff.
*G. F. Bason* and *F. H. Busbee,* for the defendant.

CONNOR, J., after stating the facts. The plaintiff's first exception to testimony becomes immaterial by reason of the answer to the first issue. His second exception is pointed to the introduction of the South Carolina statute, for that it is irrelevant and cannot affect the rights of a citizen of this State. The exception is based upon a misconception of the purpose for which the statute was introduced. For the purpose of showing the history, original creation and consolidation of the two corporations, we can see no valid objection to its competency. It certainly could not confer upon the corporation chartered in South Carolina any rights, privileges or powers in respect to the property of the plaintiff in this State, nor does it profess to do so. It simply charters a railroad company with power to construct a road to the North Carolina line. The exception was not urged in this Court and cannot be sustained.

The third exception is directed to the Act of 1874-'75, because: (1) It does not appear that in fact there was any consolidation of the two companies. (2) It does not confer any power on the corporation to condemn land. These objections go rather to the effect of the act than to its competency. The recital that a consolidation had been made in pursuance of the laws of the two States must be taken as *prima facie* true for the purposes of this case. In regard to the second ground the claim of the defendant does not depend upon the right of eminent domain, but upon a statutory presumption. The

exception cannot be sustained.  The exception to the intro-
duction of the deed in trust must also be overruled.

We are thus brought to the consideration of the real ques-
tion presented by the appeal.  Whatever corporate rights
vested in the Greenville and French Broad Railroad Com-
pany passed to and vested in the Asheville and Spartanburg
Railroad Company by the consolidation.  10 Cyc., 303.  The
power to enter upon land for the purpose of constructing the
road was clearly conferred upon the Greenville and French
Broad Railroad Company.  It was further provided by sec-
tion 11 that, in the absence of a written contract, it shall be
presumed that the land upon which the said road may be con-
structed, together with one hundred feet on each side of the
center of the road has been granted to said company by the
owners thereof.  *  *  *  The validity of the consolidation
is not material to this controversy; it was recognized by the
General Assembly in the manner herein set forth.  The trust
deed executed by the Asheville and Spartanburg Railroad
Company vested in the trustees, for the purposes therein set
out, the title to the property of the consolidated railroad
companies.  This title passed to and vested in the Asheville
and Spartanburg Railroad Company by virtue of the pro-
ceedings, decree, sale, etc., of the Circuit Court of the United
States.  By virtue of section 697 of The Code, the purchasers
became the Asheville and Spartanburg Railroad Company.
We do not think that the decision of this Court in *James v.
Railroad,* 121 N. C., 523, 46 L. R. A., 306, conflicts with
this view.  The question presented in that case is easily dis-
tinguished from the one under consideration.  At the time
of the purchase, April 4, 1881, the Spartanburg and Ashe-
ville had entered upon and constructed its track over the
land in controversy.  The plaintiff's witness puts it at about
1879 or 1880.  This Court in *Railroad v. McCaskill,* 94
N. C., 746, discusses and construes language similar to that

contained in section 11 of the charter of the Greenville and French Broad. It was held that "the presumption of the conveyance arises from the company's act in taking possession and building the road, when, in the absence of a contract, the owner fails to take steps, for two years after it has been completed, for recovering compensation. It springs out of these concurring facts, and is independent of inferences which a jury may draw from them. If the grant issued it would be more effective in passing the owner's title and estate. Thus vesting, it remains in the company as long as the road is operated, of the specified width, unaffected by the ordinary rules in reference to repelling presumptions." The decision in this case has been modified in *Railroad v. Sturgeon,* 120 N. C., 225. It is there held that under similar conditions, construing the same language, the road acquires not a title to the land but an easement which entitles it to possession of the whole right of way only when it shall appear that it is necessary for its purposes in the conduct of its business. We do not understand that in any of the decisions of this Court the doctrine of *McCaskill's case* has been otherwise modified. In *Dargan v. Railroad,* 131 N. C., 623, *Sturgeon's case* was approved. A railroad under a charter such as the one before us may acquire its right of way in three different methods: 1. By purchase, which includes dedication, in which case it will be confined to the width set forth in the deed and act of dedication. 2. By condemnation, in which case it will be confined to the width set forth in the map or profile which is required to be filed under the statute. If, in either case, it contents itself with accepting and paying for less than one hundred feet, it must be content to be restricted to such limits as are fixed. The first method of course arises out of a contract; the second is in the exercise of the right of eminent domain, and all statutory provisions for taking property in this way must be strictly construed and no such power can be

granted by implication. This is elementary learning. 3. In the absence of any written contract, it shall be presumed that the land upon which the road may be constructed, together with one hundred feet on each side of the center of the road, has been granted to the company by the owners thereof, and it acquired a good right and title to the same, so long as the land may be used only for the purposes of the road, and no longer, unless the owner shall prosecute a suit within two years to recover either the land or damages by way of condemnation. This mode of acquisition is not an exercise of the right of eminent domain; it is based upon a purely statutory presumption. The concurring conditions are (1) entry and construction of the road, and (2) the failure of the owner to prosecute an action for two years. These concurring conditions existing, the statute fixes the term of two years within which the owner may prosecute his action, and in default of which the road acquires the easement described, to-wit, "one hundred feet on each side of the center of the road" with the limitation fixed as to time and use. It would seem that there could be no doubt in regard to the meaning of the Legislature. With the policy which prompted the Legislature in the early history of railroad building in this State to put this provision in the charters of the contemplated roads we have nothing to do. Finding them to be constitutional, it is our duty to interpret and enforce them in accordance with well-settled principles of legal construction.

The boundary is fixed at "one hundred feet on each side of the center of the road" and we have no right to restrict it. The duration of the easement is "so long as the same may be used only for the purposes of the road, and no longer." This Court in *Sturgeon's case* has defined the extent of the easement, both in respect to the width and the use to which it must be confined. It is said, however, that the presumption only arises in the absence of any written contract, and the burden

is upon the defendant to show this condition. It must be conceded that when one relies upon a presumption to establish a right he must show every fact out of which the presumption arises.

While we have no disposition to violate the elementary principle of law that a party who claims to.have acquired the title to property or any easement therein or right to put any burden thereon by presumption, must establish his claim by showing the facts upon which it is based, we must not refuse to give to the clearly expressed intent of the Legislature, especially when it assumes the form of a contract, a fair interpretation. Whether in the first introduction of railroad building in this State the Legislature conferred power, in respect to the acquisition of rights of way and other special privileges, too freely, it is not within our province to say. Whether the growth in wealth and development of the natural resources of the State, incident to the improvement of facilities for transportation, has compensated for such grants, it is equally beyond our province to discuss. This Court best serves its purpose and discharges its legitimate function in our governmental system when it confines itself to its constitutional orbit "to review any decisions of the courts below upon any matter of law or legal inference." Const. Art. IV, sec. 8.

When the defendant showed its actual occupancy of the land for two years in the manner and for the purposes to which it was appropriated, in the absence of any deed or written contract or proceeding for condemnation, the statutory presumption arose with the effect upon the rights of the parties declared by the statute. If one is sued by the State for land and shows a possession, either by himself or others, for thirty years under the law as it existed prior to 1868, then arose a presumption of a grant as against the State, and a similar possession of twenty-one years presumed a deed as

against an individual. The charter simply defines the kind, character and purpose of the possession and raises the presumption of a grant of an easement of fixed limitations at the end of two years. Charters containing these provisions have been granted in this State since 1833. No serious question has ever been raised as to their validity. *Railroad v. Davis,* 19 N. C., 452. *Railroad v. McCaskill, supra; Railroad v. Sturgeon, supra.* The plaintiff must recover on the strength of his own title. The easement having·been acquired by the statutory presumption and the defendant being in the actual enjoyment of it, the plaintiff cannot oust it.

His Honor stated that there was no contradiction in the testimony and as a question of law directed the verdict  In his ruling we find

No Error.

DOUGLAS, J., dissenting. This is another case in which I would wish to state my views at greater length; but it is perhaps unnecessary to do so in view of my dissenting opinion in *Jones v. Comrs.,* 130 N. C., 457, and *Dargan v. Railroad,* 131 N. C., 626. I need only repeat·that in my opinion any construction of a statute which has the effect of taking private property without compensation and without giving the owner any adequate remedy for obtaining compensation, is contrary to the Constitution of this State as well as the Fourteenth Amendment to the Constitution of the United States. I may also say that in my opinion any statutes of limitation which discriminate against the citizen by taking from him his property while in the actual possession thereof, and giving it to a railroad corporation upon a mere constructive possession, is contrary to the letter and spirit of section 3, Article VIII of the Constitution of this State, which provides that: "All corporations shall have the right to sue and shall be subject to be sued in all courts in like manner as natural persons."

I am especially interested in the principles decided in this case on account of its unjust tendencies and dangerous possibilities. Hitherto the lands thus taken have been of comparatively small value, but if the principle is correct, what is there to prevent railroad companies from demanding a right of way two hundred feet wide through our principal cities, and thus appropriating perhaps millions of private property without the shadow of compensation. The value of the property would make no difference in the justice and legality of the claim. The cabin of the poor is as sacred as the mansion of the rich, and both should equally receive the fullest protection of the law.