HARRY W. WHITLEY v. LETITIA H. JONES AND SAM EDWARDS.

(Filed 14 October, 1953.)

**1. Appeal and Error § 39e—**

The admission of testimony as to a certain fact cannot be prejudicial when the existence of such fact is admitted in the pleadings.

**2. Trespass § 4—**

Evidence tending to show that defendants or their agents went upon plaintiff's property, without authorization, removed plaintiff's boat, which was resting on one of defendants' trailers, from his premises to the river and launched it, *is held* sufficient to overrule defendants' motion to nonsuit plaintiff's cause of action for wrongful removal of the boat, since every unauthorized entry into the close of another is a trespass, entitling the party aggrieved to nominal damages at least.

**3. Trial § 22a—**

On motion to nonsuit, the court does not pass upon the credibility of the evidence but takes plaintiff's evidence as true and gives plaintiff the benefit of every fair inference which can be reasonably drawn therefrom.

**4. Trial § 22c—**

Contradictions even in plaintiff's own evidence do not justify nonsuit.

**5. Trial § 22b—**

Upon motion to nonsuit, defendant's evidence is not to be considered unless favorable to plaintiff or not in conflict with plaintiff's evidence, in which instance it may be considered so far as it explains or makes clear plaintiff's evidence.

**6. Negligence § 19b (1)—**

Nonsuit on the issue of negligence should not be allowed unless the evidence is free from material conflict and the only reasonable inference that can be drawn therefrom is that there was no negligence on the part of the defendant, or that his negligence was not the proximate cause of the injury.

**7. Same—**

Plaintiff's evidence tending to show that his boat was in good condition when it was taken from his premises by defendants or their agents and launched in the river and towed some one and one-half miles to plaintiff's boathouse, that the boat took on water while it was being towed and that when plaintiff saw his boat it was partially submerged and had a hole punched in the bottom apparently caused by a blow from underneath, *is held* sufficient to be submitted to the jury on the issue of defendants' negligence.

**8. Negligence § 9—**

Foreseeability of injury is a requisite of proximate cause.

**9. Negligence § 20—**

An instruction on the issue of negligence which inadvertently omits any reference to foreseeability must be held for reversible error.

APPEAL by the defendants from *Williams, J.,* April Term 1953. HERTFORD.

Civil action to recover damages for the alleged wrongful removal of and negligent injury to a boat.

This is a summation of plaintiff's evidence. On 12 June 1951, the plaintiff, who was in a Veteran's Hospital in Richmond, Virginia, owned a boat, which was on a trailer in his back yard and had had repair work done on it. The trailer belonged to the defendant Mrs. Jones, and plaintiff had borrowed it from her. The plaintiff had a boathouse near Winton at the bridge over the Chowan River. Mrs. Jones' son used this boathouse for his boat. The plaintiff was in the hospital about two weeks. On return home he found his boat pulled up on the river's bank, partly in shallow water. The boat appeared to have been submerged a long time, and was ruined. The plaintiff testified as to the condition of the boat "there was a crack about 3 feet long that was cracked open and a right good sized hole punched up in it. When you break a piece of wood it makes a jagged break; it was a good sized hole." When plaintiff left for the hospital the hull of the boat was in perfect condition, when he saw it, after it had been painted.

The plaintiff finding his boat damaged went to Mrs. Jones' home, and told her he understood she sent men to his house, and removed his boat from his back yard. She replied that she had sent Sam Edwards, one of the defendants, and Lokie Sumner. He asked her did she realize they had damaged his boat. She replied she had heard something about it. He said I feel like you should pay for it, and she said I feel like we will have to, but I shall let my husband take it up with you. Her husband never contacted plaintiff, nor paid him anything.

While plaintiff was in the hospital Mrs. Jones came to his home, and had a conversation with his wife. The boat of Mrs. Jones' son was in

plaintiff's boathouse and had a little water in it. Mrs. Jones wanted to get it out, and inquired if plaintiff's boat was ready to go back in the river. Mrs. Whitley replied she did not know. Mrs. Jones said she had two men who would help; she wanted her trailer to get her son's boat out of the water. At that time Mrs. Jones' son had the key to the boathouse. Mrs. Whitley said she could not give her permission to move the boat. Two days later the defendant Edwards and one Sumner removed the boat and trailer from plaintiff's home.

The plaintiff's brother, Randolph, saw the boat in the boathouse at Winton. The boat was sunk, except about 2½ feet at the back. He got a block and tackle, and tried to pump the water out, but water came in as fast as he pumped it out. He saw a hole in the boat's bottom. The water in the boathouse was 5 or 6 feet deep. "There was a crack in the bottom and a hole big enough for me to stick two fingers in the crack, and about the center of the crack was a hole." "The hole was about 4 feet from the front in the bottom about the center of the boat. I could not say whether it was a new or old crack." "I would say the hole was pushed in from underneath." He took the boat across the river where he could dock it, pumped the water out, and pulled it up on the shore, and tied it.

In June 1951, Eugene Reid did repair work on the boat for plaintiff. He scraped and sanded the bottom of the boat, and put 3 or 4 coats of lead on its bottom, and 2 coats of green paint on top of that. He saw no rotten place in the wood, it was in good condition.

C. T. Whitley is plaintiff's father. A lady, who said she was Mrs. D. D. Jones—the defendant is Mrs. D. D. Jones—called him over the telephone, and said his son's boat was on her son's trailer, her son's boat was leaking, and she would like to get the trailer, and get his boat out. He replied to see his son's wife: he knew nothing about it. Mrs. Jones called again saying she had to get her son's boat out of the water, and she could send some good men to take his son's boat to the river. He replied it would be up to her: he "had rather she see his wife." Later Edwards and Sumner came to his house, and said they came for the boat. He told them he did not have it. He did not authorize them to go to his son's house, and get the boat. They carried the boat and trailer away from his son's house. When they raised the boat the front end was down and the rear up. Some water ran out. He said "Wait a minute, boys, is that boat leaking?" and told them he would get a rope to tie it up, if they found it was leaking. When he returned with a rope they were gone. He overtook them a mile and a half out of town, and gave them the rope, telling them if the boat leaked to tie it up, and not let it sink. On cross-examination he testified "the front end of the boat was down, and that was raised, and hitched to the automobile, and that was when the water ran out."

This is the defendant's evidence in brief. Lokie Sumner's testimony. Mrs. Jones sent her codefendant Edwards and Sumner in her car to get the boat and trailer, saying C. T. Whitley would tell them what to do. They were to get her son's boat at Winton. C. T. Whitley told them to get the boat, he had come to help them. There was a long split in the bottom of the boat, and water therein was leaking out. C. T. Whitley said it was all right to get the boat: he would get a rope and meet us, which he did. Edwards and Sumner put plaintiff's boat in his boathouse, "hooking the boat" and tied it up with all the rope they could find "to the rafters and to the stringers." In carrying the boat to the river, and in launching the boat in the river at Tuscarora Beach and in pulling it about 1½ miles with Bobby Jones' boat to the boathouse it was not struck or damaged. The defendant Edwards works regularly for Mrs. Jones and her husband.

Defendant Edwards' testimony was substantially the same as Sumner's with these additions. Mrs. Jones told him to see plaintiff's wife. The plaintiff's wife said "I guess you have come for the trailer," see his father, he will tell you what to do. In the bottom of the boat was a place 12 inches long about 3½ or 4 feet from the front end of the boat that water would run out of. He thought that the boat might sink, and suggested taking the boat off the trailer. Plaintiff's father said the boat was ready to go into the river, that his son wanted it put in and got sick. He insisted that it be put in. Mrs. Jones did not tell me to get the boat; to get the trailer. I would not have carried the boat off, if plaintiff's father had not told me. In pulling the boat in the river from Tuscarora Beach to the boathouse it took on about 8 inches of water. Plaintiff's wife gave us no permission to move the boat. Mrs. Jones told him the day he moved the boat, plaintiff's father had called her up, and told her to come and get the boat.

The defendant Mrs. Jones' testimony in brief. She loaned the trailer to plaintiff. Her son was at the University, and his boat in plaintiff's boathouse was leaking. She was afraid it would sink. She told plaintiff's wife she wanted the trailer to get her son's boat out of the water. Plaintiff's wife said she would call her later, which she did not do. Later she called plaintiff's father. He suggested to put his son's boat overboard: it was ready to be launched. Next day C. T. Whitley called her to hurry the boys over he was going to put the boat overboard. She sent the defendant Edwards and Sumner, telling them to get the trailer and bring her son's boat out of the water. She did not instruct them what to do with plaintiff's boat. She told plaintiff she had no responsibility for his boat: his father put it overboard. She denied telling plaintiff she felt like she would have to pay for his boat. Edwards told her he thought he would never get plaintiff's boat in the boathouse, it was in such bad shape.

The jury found that the defendants did not wrongfully remove plaintiff's boat and put it in the river, but the defendants by their negligence damaged the boat, and awarded damages of $745.00.

From judgment entered on the verdict the defendants appealed, assigning errors.

*Jones, Jones & Jones for plaintiff, appellee.*
*J. Carlton Cherry and W. D. Boone for defendants, appellants.*

### CAUSE OF ACTION FOR UNLAWFUL REMOVAL OF BOAT.

PARKER, J.   The jury answered the issue based on the allegations for unlawful removal of the boat: "No." The plaintiff did not appeal. The only assignments of error of the defendants as to this cause of action are Assignment of Error No. 1 as to the admission of evidence that the plaintiff remained in the hospital a little over two weeks and Assignment of Error No. 6 as to the overruling of their motion for nonsuit made at the close of all the evidence.

As to Assignment of Error No. 1.   The defendants in their answer "admitted that the plaintiff at the time in question was confined in the *McGuire Veterans Hospital in Richmond, Va.*" This Assignment of Error is without merit.

As to Assignment of Error No. 6.   The General Assembly at its session in 1951 rewrote G.S. 1-183, 1951 Session Laws, Ch. 1081. It is now the law under the 1951 statute that a motion for judgment of nonsuit may be made at the conclusion of all the evidence, irrespective of whether or not such a motion was made theretofore. If the motion is refused, and after the jury has rendered its verdict, the defendant on appeal can urge as ground for reversal the denial of his motion. The defendants in their brief on this Assignment of Error discuss almost entirely the cause of action based on negligence. A reading of the evidence leads us to the conclusion that this cause of action should not have been nonsuited. Every unauthorized, and therefore unlawful, entry into the close of another, is a trespass entitling the aggrieved party at least to nominal damages. *Lee v. Stewart,* 218 N.C. 287, 10 S.E. 2d 804.

In the trial of the cause of action for Unlawful Removal of the Boat, we find

No error.

### CAUSE OF ACTION FOR NEGLIGENCE.

The defendants' Assignment of Error No. 6 is to the denial of their general motion for judgment of nonsuit. In passing upon this motion we must assume the evidence in behalf of the plaintiff to be true, and must extend to the plaintiff the benefit of every fair inference which can be

reasonably drawn therefrom by the jury in favor of the plaintiff.  In ruling on such a motion we do not pass on the credibility of the witnesses or the weight of the testimony.  Contradictions in the plaintiff's evidence do not justify a nonsuit.  We must resolve all conflicts of testimony in his favor.  The defendants' evidence will not be considered unless favorable to the plaintiff, or not in conflict therewith, when it may be used to explain or make clear the plaintiff's evidence.  *Rice v. Lumberton,* 235 N.C. 227, 69 S.E. 2d 543; *Hughes v. Thayer,* 229 N.C. 773, 51 S.E. 2d 488; *Bundy v. Powell, ibid.,* 707; *Maddox v. Brown,* 232 N.C. 244, 59 S.E. 2d 791; *Buckner v. Wheeldon,* 225 N.C. 62, 33 S.E. 2d 480.

"A nonsuit on the issue of negligence should not be allowed unless the evidence is free from material conflict and the only reasonable inference that can be drawn therefrom is that there was no negligence on the part of the defendant, or that his negligence was not the proximate cause of the injury." *Goodson v. Williams,* 237 N.C. 291, 74 S.E. 2d 762.

The sole allegation of negligence is this, the defendants "did negligently and carelessly and without any regard for the safety of the said property of the plaintiff break a large hole in the bottom of the said boat which caused it to sink after being launched in the said Chowan River, and did permit said boat to stay submerged in said river for two days before being raised from said water."  That by reason of such unlawful acts the plaintiff has been damaged.

The evidence for the plaintiff shows these facts.  The plaintiff in June 1951 had the bottom of his boat scraped and sanded, and 3 or 4 coats of lead put on its bottom, and 2 coats of green paint on top of that.  There was no rotten place in the wood.  Eugene Reid, who did the work, testified it was in good condition.  On 12 June 1951 plaintiff was in a Veterans Hospital—he was there a little over two weeks.  When he left for the hospital his boat was on the trailer in his back yard.  It had been painted, and the hull of the boat was in perfect condition.  Plaintiff saw Mrs. Jones after he found his boat damaged, and pulled up on the river bank, and told her that he understood she sent men to his house, and removed his boat from his back yard.  She replied that she had sent the defendant Edwards and Sumner.  Plaintiff told her I feel like you should pay for it.  Mrs. Jones replied I feel like we will have to, but I shall let my husband take it up with you.  Plaintiff's boat was on Mrs. Jones' trailer.  Mrs. Jones' son had a boat in plaintiff's boathouse, which was leaking.  The water in the boathouse was 5 or 6 feet deep.  She wanted to take his boat out of the water on her trailer.  Mrs. Jones called plaintiff's father saying she had to get her son's boat out of the water, and she could send some good men to take his son's boat to the river.  He replied it would be up to her.

The defendant Edwards and Sumner got the trailer with plaintiff's boat on it from his back yard, carried it to Tuscarora Beach, and launched it in the Chowan River. They pulled it up the river about 1½ miles with the boat of Mrs. Jones' son, and put it in plaintiff's boathouse. The defendant Edwards testified that in pulling the boat up the river it took on about 8 inches of water. Edwards and Sumner hooked the boat up in the boathouse and tied it with all the rope they could find to the rafters and the stringers. Plaintiff's brother found the boat in the boathouse partially sunk. There was a crack in the bottom and a hole big enough to stick two fingers in. I would say the hole was pushed in from underneath. He carried the boat across the river, pulled it up on the shore, and tied it. There the plaintiff saw his boat. It had a crack about 3 feet long and "a right good sized hole punched up in it." Testing the plaintiff's evidence by the rules governing a motion for nonsuit, we think that the trial court was correct in submitting the case to the jury. The defendants' Assignment of Error No. 6 is overruled.

However, there is a fatal error in the charge of the court. The defendants' Assignment of Error No. 7 is to this part of the charge "if you find by the greater weight of the evidence that the plaintiff's boat was injured and damaged by the negligence of the defendants in the respects I have mentioned, it would be your duty to answer the second issue Yes." The second issue read, was the boat described in the complaint injured and damaged by the negligence of the defendants? This is the charge on proximate cause: "It is not sufficient to find the defendant negligent, but you must go further and find by the greater weight of the evidence that the negligence on their part was the proximate cause of the injury complained of; the dominant, efficient cause, the cause without which it would not have occurred; a cause which in continuous unbroken sequence brought about the injury complained of."

It is thoroughly established by our decisions that foreseeability of injury is a requisite of proximate cause. *Davis v. Light Co., ante,* 107, where the cases are cited.

"The law requires reasonable foresight and, when the result complained of is not reasonably foreseeable in the exercise of due care, the party whose conduct is under investigation is not answerable therefor." *Newell v. Darnell,* 209 N.C. 254, 183 S.E. 374, which excerpt is quoted with approval in *Roberson v. Taxi Service, Inc.,* 214 N.C. 624, 200 S.E. 363.

The court in its charge on proximate cause omitted to give the essential element of foreseeability of injury. This was "a casualty of the circuit" of the learned and experienced judge below, but nevertheless it requires a new trial. The defendants' Assignment of Error No. 7 is good, and on the cause of action for negligence a new trial must be ordered.

New trial.