## I. A. SCHAFER v. SOUTHERN RAILWAY COMPANY.

(Filed 14 January, 1966.)

**1. Trespass § 7—**

Undisputed evidence that defendant trespassed upon plaintiff's land entitles plaintiff to a peremptory instruction upon the issue of trespass and to nominal damages. While the court may also submit an issue as to whether plaintiff's property was damaged as well as an issue as to the amount the plaintiff is entitled to recover, the failure of the court to instruct the jury that the trespass itself would entitle plaintiff to nominal damages must be held for prejudicial error on appeal from judgment for defendant upon a negative answer to the issue of damage, since a verdict for nominal damages would carry with it liability for costs.

**2. Evidence § 42—**

The conclusions of an expert witness must be based upon facts within his own knowledge testified to before the jury or upon a statement of hypothetical facts supported by evidence, since the premise upon which his opinion rests must be made known to the jury in order that the jury may properly evaluate his opinion.

**3. Evidence § 51—**

Defendant's expert witness was permitted to testify as to his opinion of the cause of the cracks in the walls of plaintiff's building upon a question which, in narrating hypothetical facts in evidence, stated that some of the evidence indicated the cracks did not appear until after the trespass and other evidence tended to show that the cracks existed before the trespass. *Held:* Objection to the question and answer should have been sustained, since it cannot be ascertained whether the opinion was based upon the premise that the cracks appeared before or after the trespass.

**4. Same—**

An expert witness, after testifying to having an opinion based upon hypothetical facts stated, should be asked whether the facts assumed could have caused the condition in question rather than what actually did cause it.

**5. Evidence § 43—**

The evidence disclosed that the witness casually observed the cracks in the walls of plaintiff's building while standing outside. *Held:* The evi-

dence does not disclose such an inspection of the building as would qualify him to give an expert opinion as to the cause of the cracks in the wall of the building.

APPEAL by plaintiff from *Johnston, J.,* 15 February 1965 Session of SURRY.

The plaintiff alleges: He is the owner of a tract of land and a building situated thereon; the defendant's railroad track runs immediately back of this building; the defendant trespassed upon the plaintiff's property and dug a ditch thereon between the track and the building, the ditch being within a few inches of the foundation of the building; the ditch was dug so that it did not drain the water, falling upon the surrounding properties, away from the plaintiff's building, but collected such water beside the building so that the water seeped under its foundations, undermining them and causing them to crack and give way so that the building was damaged. The answer denies all of the material allegations of the complaint.

The jury found that the plaintiff's property was not damaged by the defendant. From a judgment that the plaintiff have and recover nothing of the defendant and dismissing the action, the plaintiff appeals.

*White, Crumpler, Powell, Pfefferkorn & Green for plaintiff appellant.*

*W. T. Joyner; Womble, Carlyle, Sandridge & Rice for defendant appellee.*

LAKE, J.　The undisputed evidence is that the defendant, without permission, entered upon land in possession of the plaintiff and dug a ditch thereon. This being denied in the answer, the court should have submitted to the jury the issue: Did the defendant trespass upon the land of the plaintiff, as alleged in the complaint? The jury should have been instructed to answer the issue in the affirmative if they believed the evidence on this point to be true. No such issue was submitted.

The plaintiff was entitled to nominal damages, at least, if the jury found the defendant so entered on the plaintiff's land and dug the ditch. *Matthews v. Forrest,* 235 N.C. 281, 69 S.E. 2d 553; *Hutton v. Cook,* 173 N.C. 496, 92 S.E. 355. A verdict for even nominal damages would carry with it liability for the costs of the action.

There was no error in submitting the issue: "Was the plaintiff's property damaged by the defendant, as alleged in the complaint?" The only controversy which developed upon the evidence was as to

whether the digging of the ditch was the cause of the damage to the plaintiff's building, there being no conflict in the evidence as to the condition of the building at the time the suit was instituted. It was not error to submit this as a separate issue from the issue as to the amount, if any, which the plaintiff is entitled to recover, nor was there error in the instructions to the jury concerning this issue. However, upon the issue as to the amount the plaintiff was entitled to recover, the court should have instructed the jury concerning his right to recover nominal damages, as above mentioned. This the court failed to do. On the contrary, the jury was instructed that if it answered the issue as to whether the plaintiff's property was damaged by the defendant "No," it would not consider at all the issue as to the amount which the plaintiff was entitled to recover. Accordingly, the jury did not answer that issue.

Upon the question of the cause of certain cracking and breaking of the plaintiff's building, the defendant's witness Greenwood, found by the court to be an expert in construction engineering, was permitted, over objection by the plaintiff, to answer a long hypothetical question, the material portions of which were as follows:

> "[I]f the jury should find from the evidence that in 1946 Mr. Schafer constructed a warehouse building * * *; that the building was in a low area which used to be a marshy area, but the area had been filled in; that the building was constructed with cinder blocks * * *; that the foundation was made of cinder blocks filled in with dirt; that is, the footings were constructed and then the dirt was filled in inside the footings; that the walls were built on a cement floor which was laid on top of fill dirt; * * * that in the Fall of 1960 a ditch was dug from two to four feet wide between the spur track and the building * * *; that the ditch was two to three feet deep, and water stood there in the ditch most of the time; that a horizontal crack appeared in the east wall of the building and that crack extended lengthwise down the building, with the cinder block bulging out or separated at the crack; *that some evidence indicated that the crack did not appear until a year or so after the ditch was dug, and other evidence tended to show that the crack existed before the ditch was dug;* that water stood on the spur track and the ditch was dug to drain the water off the spur track; that the ditch was filled in 1962, but the building continued to crack and the long horizontal crack separated more in the last few years; that the natural drain of the water on the west side of the building *may have been* from south to north, but the water in the ditch did not *appear to* drain, do you have

an opinion satisfactory to yourself as to what could have caused the long horizontal crack in the building and the walls to bulge out?" (Emphasis ours.)

The witness answered that it was his opinion:

"That the building settling, or the cracks along that wall, were created or attributed to inward forces pushing out, along with a portion of the roof structure, creating cracks, but mainly the inward pressure of the dirt kicking the wall out. That is the dirt below the cement floor."

The witness was then asked to explain his answer and, again over objection, included in the explanation the following:

*"To explain exactly what happened,* it is like this: The dirt is inside the building, inside the wall, and * * * my opinion is that the inside dirt, the dirt inside of the building, pushed the wall out. The dirt did settle, and the dirt did let the floor down, and the floor went down and kicked the wall out at the bottom. These two things are the two things that happen when we have a dirt settlement inside the retaining wall. *That railroad didn't cause it.* The railroad is four feet out, anyway. As the floor sagged and a portion of it went down and the dirt beneath it gave away, or settled, it rotated. *That is what this did.* (Emphasis ours.)

\*          \*          \*          \*

"In my opinion, the ditch did not have anything to do with the horizontal crack in the wall. I have seen similar cracks in buildings where there were no ditches."

The witness, Greenwood, inspected this building shortly before the trial, which was some five years after the digging of the ditch and the appearance of the cracks in question.

When, as here, an expert witness is called upon to assist the jury by giving his opinion as to the inference or conclusion to be drawn as to the cause of an event, the premise or premises upon which his opinion rests must be made known to the jury, in order that the jury may properly evaluate his opinion as a guide to them in reaching their own conclusion. Wigmore on Evidence (3d Ed.) § 672; Rogers on Expert Testimony (3d Ed.) § 54. As was said by Moore, J., speaking for the Court in *Service Co. v. Sales Co.,* 259 N.C. 400, 414, 131 S.E. 2d 9:

"The facts upon which an expert grounds his opinion 'must be brought before the jury in accordance with the recognized rules of evidence. When these facts are all within the expert's

own knowledge, he may relate them himself and then give his opinion; or, within the discretion of the trial judge, he may give his opinion first and leave the facts to be brought out on cross examination.' "

Here, the witness, Greenwood, inspected the building and stated certain conditions which he observed five years after the digging of the ditch and the appearance of the crack. However, counsel for the defendant did not ask Greenwood to give his opinion as to the cause of the cracking of the wall on the basis of Greenwood's own observation. He asked for this opinion on the basis of the several hypotheses stated in his question to the witness. These hypotheses leave suspended in uncertainty the very material question of whether the crack appeared before or after the ditch was dug. The question was so worded that the jury could not determine whether the witness reached his opinion, "The ditch did not have anything to do with the horizontal crack in the wall," on the premise that the crack was in existence before the ditch was dug, or on the premise that it first appeared after the ditch was dug. Again, the jury could not determine, from the hypotheses stated in the question, whether the expert's opinion was based upon the premise that the ditch disturbed the nautral drainage or upon the opposite premise. Since the question called for an opinion upon the basis of premises not clearly stated therein, it would be impossible for the jury to correctly evaluate the opinion given in the light of the jury's own ultimate determination of the disputed fact as to whether the crack appeared before or after the ditch was dug. The objection to the question should, therefore, have been sustained and the witness should not have been permitted to state his opinion as to the cause of the crack until the precise basis for his opinion was before the jury.

It was also error to permit the witness, in the form of an explanation of the reasoning which led him to his opinion, to state "exactly what happened," since this witness did not observe the event in question but inspected the building for the first time five years after it occurred. In *Patrick v. Treadwell*, 222 N.C. 1, 21 S.E. 2d 818, Devin, J., later C.J., speaking for the Court, said:

"However, while the tendency is to liberalize the rule as to this class of opinion evidence, and to hold it admissible when it tends to aid the jury in the search for truth, * * * even when the opinion of the expert based upon peculiar knowledge, skill and experience is given as to the ultimate question in issue, this rule should not be relaxed to the extent of opening the door to the statement of an evidential fact in issue beyond the knowledge of the witness under the guise of an expert opinion."

When an expert is testifying as to his opinion, concerning the cause of an event which he did not observe, the proper form of question is one which states, hypothetically, premises as to which there is evidence already in the record. The question should then call for the opinion of the expert as to whether the facts so supposed could have caused the condition in question, rather than calling for the witness' conclusion as to what actually did cause it. *Service Co. v. Sales Co., supra; Patrick v. Treadwell, supra; Summerlin v. R. R.,* 133 N.C. 550, 45 S.E. 898; Stansbury, North Carolina Evidence, § 137.

No doubt, the witness' introductory remark, "to explain exactly what happened," was an unfortunate choice of words and he meant simply to state the operation and sequence of certain forces and movements of the building rather than the cause of those movements. However, these are the words with which he introduced his statement, "That railroad didn't cause it." Again, in this statement, he may have meant the railroad track or the operation of the trains upon it did not cause the crack in the building wall, but his words are equally susceptible to the interpretation that the defendant (the railroad) did not cause the crack by digging the ditch. We think that the answer, which was given over objection following the witness' announcement that he was going to state "exactly what happened," amounted to "the statement of an evidential fact in issue beyond the knowledge of the witness under the guise of an expert opinion," such as was warned against in *Patrick v. Treadwell, supra.*

Upon cross examination of the plaintiff's witness, Smith, who actually dug the ditch for the railroad, the defendant was permitted, over objection, to ask: "Now, Mr. Smith, based upon your examination of the building in 1960, do you have an opinion as to what caused the walls to bulge out?" The only examination made by this witness in 1960, which was when he was engaged in the digging of this ditch, was described by the witness as follows:

"I will tell you what investigation I made when I was out there in 1960. I just observed that the building was cracked across the end and across the back. I went up to the cracks; I was right there by them. I was right touching it and standing there. I had my hand on the building, leaning on the building, as far as that goes."

This is not an inspection of the building such as would qualify an expert to give an opinion as to the cause of the crack in the wall. Of course, this was competent evidence upon the question of whether the crack in question existed before the ditch was dug, but

this witness did not stop there. He was asked, on the basis of this observation, to express an expert opinion as to the cause of the crack. Regardless of the qualification of the witness, if his testimony shows that his proposed opinion is based on inadequate data his opinion should be excluded. *Service Co. v. Sales Co., supra;* Stansbury, North Carolina Evidence, § 136. The mere casual observation of a crack in a building wall by one who is present for an entirely different purpose is not a sufficient basis upon which he may be allowed to express an opinion as to the cause of the crack.

The admission of these opinions as to the cause of the cracking of the building wall was clearly prejudicial to the plaintiff.

New trial.