ALBERT L. KEZIAH AND WIFE, NORMA P. KEZIAH, AND CLEGG A. KEZIAH AND WIFE, HELEN O. KEZIAH, PLAINTIFFS, v. SEABOARD AIR LINE RAILROAD COMPANY, DEFENDANT.

(Filed 12 January, 1968.)

**1. Railroads § 1—**

A right of way for railroad purposes may be established by statutory presumption, and the burden is upon the railroad company to show by a preponderance of the evidence that, pursuant to its charter, it entered upon the land and constructed its tracks in the absence of any contract with the owner and that the owner did not apply for compensation within two years from the completion of the road.

**2. Railroads § 3—**

Where a railroad company has acquired an easement by statutory presumption, such easement extends for the full width of the right of way provided by its charter, and when its charter provides for a 200 foot right of way it may exercise its use of the right of way to its full width for purposes necessary for its railroad business, notwithstanding occu-

pation of a part of the right of way by the owner or any other person, or the registration of subsequent deeds or maps.

**3. Constitutional Law § 6—**

The policy-making power of the legislature is not within the province of the court, and it will not question the policy, adopted by the legislature in the early history of railroad building in this State, of granting to railroad corporations the right of liberal acquisition of properties.

**4. Railroads § 1— Railroad right of way held acquired by statutory presumption.**

Uncontradicted evidence that the defendant railroad company was successor in title to an earlier railroad company which had constructed its tracks over the lands of the plaintiff some ninety years before, without any contract with the original land owner, and with no action by the owner for compensation within two years following completion of the road, *is held* sufficient to entitle defendant to a peremptory instruction that it is the owner of a 200 foot right of way under the statutory presumption of a grant from the owner of the land. Private Laws of 1854-55, ch. 225, § 28.

**5. Trespass § 1—**

Evidence of the plaintiff that the defendant railroad company parked one of its trucks on the plaintiff's land some 125 feet from the center of the railroad track, that the entry upon the land was unauthorized, and that the defendant admitted that its right of way extended only 100 feet from the center of its track, *held* sufficient to go to the jury in plaintiff's action for trespass upon the land, although the damages would seem to be nominal.

**6. Same—**

Any unauthorized entry on the land in the actual or constructive possession of another constitutes a trespass, irrespective of degree of force used or whether actual damage is done, and such entry entitles the aggrieved party to at least nominal damages.

APPEAL by plaintiffs from *Hall, J.,* August 1967 Session of UNION.

Civil action for alleged trespass upon land and for a permanent injunction. The subject of the controversy is a strip of land lying north of and running parallel with defendant's railroad track, in Union County, North Carolina.

Clegg A. Keziah, one of the plaintiffs, testified in pertinent part as follows: That he and the other plaintiffs purchased the land involved in the controversy in April 1961, that the property purchased lies north of the railroad, and that there was no construction work on the property at the time of the purchase; that in June 1961 he observed Seaboard Air Line Railroad Company equipment cutting a ditch across the property, which ditch was located about 75 to 80 feet from the center line of the main track of the railroad and was being cut so as to run parallel with the railroad track. He requested

the agents of the railroad company to stop digging the ditch and to withdraw the men from the property. His request was not complied with. He further testified that there was a truck belonging to defendant about 125 feet north of the center of the railroad track. He stated that in his opinion the value of the property owned by plaintiffs before the digging of the ditch was $30,000, and that after the ditch was dug the value was $22,000. He identified a map marked "Court Map No. 1" and read the description of the property which plaintiffs claim to own and as set out in the complaint as follows:

"On the north side of the Carolina Central Railroad, adjoining the property of A. A. Secrest, A. M. Secrest, William Helms and Frances Carnes, and described as follows: Beginning at an iron stake in the center of a road leading to the home of Alice Huntley, corner of Frances Carnes, (said iron stake being South 3 West 322 feet and 4 inches from a stake in the center of the Ansonville Road, northwest corner of Frances Carnes) and running thence South 3-40 West 580.45 feet to an iron stake in the Carolina Central Railroad; thence South 85-45 East 50 feet to an iron stake in the center of the railroad; thence North 3-30 East 35 feet to an iron stake; thence parallel with the railroad about North 86-15 East 511-5 feet to a stake; thence North 11 West 198 feet to a stake by a pine and a white oak; thence North 22 West 396 feet to a stake by a pine and post oak in the line of William Helms; thence with his line North 84 deg. West 126.5 feet to an iron stake in the line of Frances Carnes by a B. J. pointer; thence with two lines of Frances Carnes as follows: 1st, South 8-30 East 53.25 feet to an iron stake and 2nd, North 85-30 West 229 feet to the beginning, containing 5⅝ acres, more or less."

Neither the deed nor the map shows a 100-foot railroad right of way from the center of the railroad in either direction.

The parties stipulated that defendant was successor in title to all property and property rights owned by Carolina Central Railroad Company in Union County, North Carolina, and that Carolina Central Railroad Company had the same rights to acquire property and property rights and had the same presumptions of acquisition of property and property rights which were granted to the Wilmington and Charlotte Railroad Company by Chapter 225 Private Laws of North Carolina, Session 1854-1855.

The Wilmington and Charlotte Railroad Company was incorporated by the Private Laws of North Carolina in the 1855 Session by Chapters 225 and 226. Pertinent portions of the statute which affect this appeal are as follows:

In Section 26 it is provided: ". . . That when any lands or right of way may be demanded by said company, for the purpose of constructing their road, and for the want of agreement as to the value thereof, or from any other cause the same cannot be purchased from the owner or owners, the same may be taken at a valuation to be made by five commissioners or a majority of them, to be appointed by any court of record, having common law jurisdiction, in the county where some part of the land or right of way is situated . . . and the lands or right of way so valued by the said commissioners, shall vest in the said company so long as the same shall be used for the purposes of said railroad, so soon as the valuation may be paid, or when refused, may have been tendered: . . . That the right of condemnation herein granted, shall not authorize the said company to invade the dwelling house, yard, garden, or burial ground of any individual without his consent."

It is provided by Section 27: "That the right of said company to condemn lands in the manner described in the 26th section of this act, shall extend to condemning of one hundred feet on each side of the main track of the road, measuring from the centre of the same. . . ."

By Section 28 it was further enacted: ". . . That in the absence of any contract or contracts in relation to the land through which said road or any of its branches may pass, signed by the owner thereof, or his agent, or any claimant or person in possession thereof, which may be confirmed by the owner thereof, it shall be presumed that the land over which said road or any of its branches may be constructed, together with the space of one hundred feet on each side of the centre of said road has been granted to said company by the owner or owners thereof; and the said company shall have good right and title thereto, and shall have, hold, and enjoy the same so long as the same shall be used for the purposes of said road and no longer, unless the person or persons owning the land at the time that part of the said road which may be on said land was finished or those claiming under him, her or them, shall apply for an assessment of the value of said lands as hereinbefore directed within two years next after that part of said road which may be on the said land was finished; and in case the said owner or owners, or those claiming under him, her or them, shall not apply within two years next after the said part was finished, he, she or they shall forever be barred from recovering said land, or having any assessment or compensation therefor: Provided, that nothing herein contained shall effect the rights of *feme* coverts or in-

fants until two years after the removal of their respective disabilities."

That part of defendant's railroad tracks involved in the instant litigation was constructed between 3 May 1873 and 15 December 1874.

By Chapter 75 of the Public Laws of 1873 the Carolina Central Railroad Company, predecessor in title to the Seaboard Air Line Railroad Company, was incorporated. This act, by sections 9, 10 and 11, contained basically the same provisions as contained in sections 26, 27 and 28 of Chapter 225 of the Private Laws of the 1855 Session.

Defendant offered the deposition of M. A. Niegro, which was admitted into evidence. By his deposition Mr. Niegro testified that he was the general real estate agent for Seaboard Coast Line Railroad Company and was formerly real estate agent for Seaboard Air Line Railroad Company before the merger on 1 July 1967 between it and the Atlantic Coast Line Railroad Company; that he was the official custodian of all deeds and other muniments of title of right of way of Seaboard Coast Line Railroad Company. He certified there was no deed or muniment of title among the official records of the railroad company affecting the 200-foot charter-grant right of way of the railroad which crossed plaintiffs' property in Union County; that there had been no modification in the 200-foot right of way granted in the charter to the railroad by the North Carolina General Assembly, and that there had been no change in the location of defendant's main-line track in the vicinity of plaintiffs' property since it was originally laid; further, that an examination of the official deeds, muniments of title and records of defendant railroad revealed no record of condemnation or any record of contracts affecting defendant railroad's right of way across plaintiffs' property.

Koy E. Dawkins, an attorney at law of Monroe, North Carolina, testifying for defendant, stated he had examined the public records of Union County to determine plaintiffs' predecessors in title during the years 1870 to 1876. His examination of the record title to plaintiffs' property disclosed there were no deeds or contracts affecting the charter-grant right of way claimed by defendant, nor was there of record any lawsuit, including condemnation proceedings, between the predecessor record title holders to plaintiffs' property and defendant's predecessors in title prior to 1880. In tracing plaintiffs' title to the land, Dawkins stated that plaintiff's property was formed from two tracts of land; that one tract, forming the western boundary, commenced at the center line of defendant's railroad track, extended east along the center line of the track for 50

feet, and then continued in a northerly direction. The second tract, east of and adjoining the other tract, had a southern boundary 35 feet north of the center line of defendant's railroad track, and extended in an easterly direction. The description of the second tract did not state the relationship of the southern boundary of plaintiffs' property to defendant's railroad track.

Joe P. Porcher, Assistant Division Engineer for defendant railroad company, testified that he was in direct charge of the construction of the ditch on the Keziah property. He stated that Mr. Keziah told him he was on his property and that he was going to obtain an injunction to stop the work. He continued with the work. He stated that the full extent of the drainage ditch is within 100 feet north of the center line of the main-line track of the railroad and nothing was done on the property beyond 100 feet north of the center line.

Plaintiffs recalled Clegg A. Keziah, who testified in effect that there was no drainage problem within 200 feet of the main line of the railroad on the Keziah property prior to the digging of the ditch.

At the close of all the evidence, upon motion of defendant for judgment as of nonsuit, the motion was allowed. Plaintiffs appealed.

*Clark and Huffman for plaintiff appellants.*
*Cansler & Lockhart for defendant appellee.*

BRANCH, J. The first and principal question for decision is whether the charter granted to Wilmington and Charlotte Railroad Company by the 1854-1855 Session of the General Assembly by Chapter 225 granted a right of way 100 feet wide on each side of defendant's main track, measuring from the center of same.

It is of interest to note that in the case of *R. R. v. McCaskill,* 94 N.C. 746, one of defendant's corporate predecessors was plaintiff and the act before us in the instant case was therein construed. In that case the railroad brought an action in ejectment to recover possession of property located within 100 feet of the center line of the railroad company's track. Defendant claimed the property it occupied by virtue of deeds of conveyance. Affirming the judgment of the lower court for the plaintiff, this Court stated:

"It is not material to inquire into the source from which the defendant derives his title, beyond his mere occupancy, since the plaintiff must establish its right to the possession of the premises, in order to a judgment of ejection. In whomsoever the estate was vested, there being no suggestion that they were under disabilities, it was, under the statute, as soon as the road was constructed and *toties quoties* as it progressed towards con-

clusion, transferred to the corporation, of the required width of 100 feet on either side, to be paid for as directed, when no written contract has been entered into for the purchase. In such case, the inaction of the owner in enforcing his demand for compensation for land taken and appropriated after the finishing of the construction of the road thereon, for the space of two years thereafter, raises, under the statute, a presumption of a conveyance and of satisfaction, and hence becomes a bar to an assertion by legal process, of such claim.

"These conditions unite in this case, and not only does the title vest in the corporation, but the remedy given the owner, under no disability, has been lost by lapse of time.

.   .   .   .

"The presumption of the conveyance arises from the company's act in taking possession and building the railway, when in the absence of a contract, the owner fails to take steps, for two years after it has been completed, for recovering compensation. It springs out of these concurring facts, and is independent of inferences which a jury may draw from them. If the grant issued, it would not be more effective in passing the owner's title and estate. Thus vesting, it remains in the company as long as the road is operated, of the specified breadth, unaffected by the ordinary rules in reference to repelling presumptions,

.   .   .
.   .   .   .

".   .   . the statute does not require the occupation and direct use of every foot of the condemned area, for building embankments and the like, but preserves the property in the company, so long as the road runs over the land and is operated by the company. A permissive use of part of it by another, when no present inconvenience results to the company, is not a surrender of rights of property, and, indeed, to expel an occupant under such circumstances, would be a needless and uncalled for injury. This may suspend, but does not abridge the right of the company to demand restoration, when the interests of the road may require its use."

The *McCaskill* case was modified in the case of *R. R. v. Sturgeon,* 120 N.C. 225, 26 S.E. 779, where the Court considered similar conditions and the same statutory language as in *McCaskill,* and held that the railroad did not acquire a title to the land, but acquired an easement which entitled it to possession of the whole right of way

only when it should appear that it was necessary for the conduct of its business.

In the case of *R. R. v. Lissenbee*, 219 N.C. 318, 13 S.E. 2d 561, the railroad brought action to require defendant to remove obstructions around its signal and switching system, and to restrain defendant from interfering with its equipment. Defendant contended the right of way of plaintiff was limited and it had no rights on places where the electric signal was situated. Plaintiff contended that its charter granted by statutory presumption a right of way 100 feet on each side of the center line of its track and over the property of the defendant. Plaintiff's charter contained a section substantially the same as section 28 of Chapter 225, Session 1854-1855, hereinbefore set out. The Court, affirming judgment in favor of plaintiff, stated:

> "Provisions of similar character and like effect, to this quoted portion of section 29, appearing in the charters granted by the General Assembly to other railroad companies in the early era of railroad building in North Carolina have been considered in numerous decisions of this Court, among which are these: *Vinson v. R. R.*, 74 N.C. 510; *R. R. v. McCaskill*, 94 N.C. 746; *R. R. v. Sturgeon*, 120 N.C. 225, 26 S.E. 779; *Dargan v. R. R.*, 131 N.C. 623, 42 S.E. 979; *Barker v. R. R.*, 137 N.C. 214, 49 S.E. 115; *R. R. v. Olive*, 142 N.C. 257, 55 S.E. 263; *Earnhardt v. R. R.*, 157 N.C. 358, 72 S.E. 1062.

> "The tenor of these decisions is expressed in *Barker v. R. R.*, *supra*, in this manner: 'This mode of acquisition is not an exercise of the right of eminent domain; it is based upon a purely statutory presumption. The concurring conditions are (1) entry and construction of the road, and (2) the failure of the owner to prosecute an action for two years. These concurring conditions existing, the statute fixes the term of two years within which the owner may prosecute his action, and in default of which the road acquires the easement described, to wit: "100 feet on each side of the center of the road" with the limitation fixed as to time and use.'

> "Again, in *Earnhardt v. R. R.*, *supra*, it is said: 'The effect of inaction on the part of the owner for a period of two years after the completion of the road has been considered in several cases in this Court, under charters similar to the one before us, and without difference of opinion, it has been held that under such circumstances, a presumption of a grant from the owner arises for the land on which the road is located and for the right of way provided for in the charter.'

"This presumption, however, only arises in the absence of contract in relation to the lands through which the railroad may pass. Hence, the burden is upon the party claiming the benefit of such presumption to show every fact out of which it arises. *Barker v. R. R., supra.*"

Again, in the case of *R. R. v. Manufacturing Co.*, 229 N.C. 695, 51 S.E. 2d 301, the Court considered provisions in a charter similar to those pertinent to the instant case, and held:

"It is generally held that where a common carrier by railroad, under provision of its charter, enters upon land and builds a railroad, without grant or condemnation of the right of way, and no action or proceeding is commenced by the landowner within the statutory period for recovering compensation, a presumption of a grant or conveyance arises from the concurrence of these circumstances, and this presumption extends to the limits which the railroad company might have taken by condemnation and for which the landowner could have recovered compensation had he brought his action within the prescribed period of time. *Earnhardt v. R. R.*, 157 N.C. 358, 72 S.E. 1062. In such circumstances the railroad is said to acquire its right of way by implied grant or by operation of law. *R. R. v. McCaskill*, 94 N.C. 746; *R. R. v. Sturgeon*, 120 N.C. 225, 26 S.E. 779; *R. R. v. Olive*, 142 N.C. 257, 55 S.E. 263, and cases there analyzed and reviewed."

Appellants correctly contend that when defendant relies on a statutory presumption to establish its right of way, the burden is upon defendant to show by a preponderance of the evidence every fact out of which the presumption arises, *i.e.*, that defendant entered upon the land and constructed its tracks in the absence of any contract with the owner and that the persons owning the land when the road was finished did not apply for compensation within two years, as provided by statute. *Barker v. R. R., supra; Earnhardt v. R. R., supra.*

Here, defendant railroad company offered uncontradicted evidence of entry and construction of the railroad over ninety years ago, without any contract with the owner or owners. Plaintiffs neither by allegation nor proof controverted this evidence. Manifestly, sufficient time has long since elapsed for acquiring the right of way by statutory presumption.

Other than evidence of the alleged trespass, the essence of appellants' evidence was that there were Western Union poles on the

property in controversy and that there was a fence within 80 feet of defendant railroad company's main track; that certain conveyances tend to show that the southern boundary of plaintiffs' line is 35 to 50 feet from the center line of the track, and that other adjoining land appears about 50 feet from the center of the track.

It is well settled by statute and precedent in this jurisdiction that when a railroad has acquired and entered upon the enjoyment of its easement, the further appropriation and use by it of the right of way for necessary railroad business may not be destroyed or impaired by reason of the occupation of it by the owner or any other person. G.S. 1-44; *R. R. v. McCaskill, supra; R. R. v. Bunting,* 168 N.C. 579, 84 S.E. 1009.

Further, the fact that others own fee in the right of way and such ownership is indicated by deed or map appearing in the public registry presents no evidence of probative force that the right of way does not belong to the railroad, since it only has an easement which it may exercise to the full extent when in its judgment the necessities of its business so require.

Appellants argue that the presumption created by charter granted in Chapter 225, Private Laws of 1854-1855, cannot apply to a tract of land over which the railroad is not constructed. In this connection, appellants rely strongly on the case of *Wearn v. R. R.,* 191 N.C. 575, 132 S.E. 576, which states:

"The law of North Carolina as declared in many decisions is to the effect that if a railroad company enters upon land under a deed or grant from the owner which purports to convey an unrestricted right of way and no definite quantity or width of land is specified, and thereafter constructs its road thereon, then it is presumed that the owner has granted to the company the width designated in the charter or in the general statute. This statutory presumption therefore applies: (1) In the absence of a contract between the parties; (2) where the contract purports to convey an unrestricted right of way and no definite quantity or width is specified; (3) only against owner across or over whose land the track is constructed."

Appellants, of course, rely on subsection (3) quoted above to sustain their position.

The facts in the *Wearn* case, on which appellants rely, are distinguishable from the instant facts, in that in *Wearn* the defendants claimed an easement by virtue of a grant from the Town of Charlotte and from one Peter M. Brown, and also by virtue of the statutory presumption. In *Wearn* it is stated: "It has also been deter-

mined that a railroad company cannot claim under a deed and also under a statutory presumption." *Hickory v. R. R.*, 137 N.C. 189, 49 S.E. 202. The *Wearn* case further stated:

". . . When the defendant accepted the deed restricting and limiting the amount of land to be used for railroad purposes, it cannot be permitted to extend its user or easement beyond that portion of said land actually used and occupied. This construction of the deed in question and the effect of the restrictive clause referred to is established in the decision of *Tighe v. R. R.*, 176 N.C. p. 239. In the *Tighe* case there was a restrictive clause and evidence to show that only a portion of the land was used and occupied by the railroad company under said restrictive clause, and the finding of the jury as to the extent of the easement and judgment thereon was upheld."

The *Tighe* case, cited above, is a case in which the defendant railroad company acquired by deed a less width of land as a right of way than that authorized by its charter, and action was brought to recover damages for alleged encroachment upon the property of the plaintiffs in the construction of defendant's track. There was evidence which tended to show that only one-quarter of an acre was used and occupied by the railroad company. The Court, holding that only by condemnation and payment of compensation to the owner could the railroad company occupy more than was conveyed by deed, stated:

"Indeed, our decisions are uniform that when a railroad company has acquired the right of way by condemnation or by purchase of the right of way, the deed not limiting the conveyance to less than the statutory width (as in *Hendrix v. R. R.*, *supra* (162 N.C. 9)), or has entered upon the land and acquired it without condemnation and without conveyance, by reason of the acquiescence of the owner for the statutory time — in all these cases, while the railroad can use only the part actually occupied (the adjacent proprietor using the rest of the right of way *sub modo*, that is, subject to the easement of the railroad), still in all these cases, whenever the necessities of the company require it, it can extend its user of the right of way to the extent of the statutory right for additional tracks or other railroad purposes. This matter has been fully discussed and uniformly decided in many cases." Citing *R. R. v. Olive*, 142 N.C. 264; *R. R. v. Sturgeon*, 120 N.C. 225; *R. R. v. McCaskill*, 94 N.C. 746; *Barker v. R. R.*, 137 N.C. 214.

"The present case, however, is distinguished from the above, for here the defendant railroad did not acquire the right of way either by condemnation or by occupation, without objection, for the statutory time, nor by a deed for the 'right of way,' all of which would be presumed to give an easement to the full width of the right of way allowed by the charter or the general law; but the defendant railroad was content to accept a deed specifying as the boundary 'according to the survey made by Ed. Myers, civil engineer,' and the jury find that this did not embrace the *locus in quo*. The defendant therefore is restricted to the boundary described in its deed."

Here, defendant railroad did not acquire the right of way in dispute by a restricted conveyance, nor did it rely on both a conveyance and a statutory presumption. It claims only by virtue of the statutory presumption authorized by its charter, which presumption is not restricted to the owner or owners over whose land the track is constructed.

In light of presentday land values, the density of the population and the highly developed state of our economy, we might, at first glance, question the policy of liberal acquisition of properties granted to railroad corporations by the legislature. However, the policy-making power of the legislature is not within our province, and the policy adopted by the legislature in the early history of railroad building in this state is justified in the case of *R. R. v. Olive, supra,* from which we quote:

"... The point of view from which charters for railroads were drawn in this State fifty years ago must not be lost sight of in construing them in the light of present conditions. If, to induce the investment of capital in the construction of railroads and development of the country, large privileges were conferred, not inconsistent with the exercise of the sovereign power of the State in controlling them, we may not construe them away without doing violence to sound principle and fair dealing. When these rights-of-way were granted, or statutes enacted permitting their acquisition in the exercise of the right of eminent domain, it was contemplated that they should be sufficient width to enable the company to safely operate the road and protect the adjoining lands from fire communicated by sparks emitted by the engines. Land was cheap and population sparse. The railroads, as the charters show, were to be built by the citizens of the State, the capital stock to be subscribed by large numbers of people; legislatures were ready to make broad

concessions to these domestic corporations, and, as shown by the record in this and other cases in this Court, the owners of lands, because the 'benefits which will arise from the building of said railroads to the owners of the land over which the same may be constructed will greatly exceed the loss which may be sustained by them,' were 'desirous to promote the building' thereof and to that end to give to them rights-of-way over their lands. When the road has been constructed and the benefits enjoyed, although new and unexpected conditions have arisen, the rights granted may not be withdrawn, although the long-deferred assertion of their full extent may work hardship."

Defendant had the burden of proof to establish all the facts giving rise to the statutory presumption, *i.e.*, entry and construction of the road in absence of any contract in relation to the land, and inaction on the part of the owner of the land for over two years after building of the road. All the evidence, without conflict, tends to support its claim that the statutory presumption has arisen. Thus, defendant was not entitled to a nonsuit, but was entitled, upon proper issues being submitted to the jury, to a peremptory instruction that it is the owner of a right of way over the land in controversy to the extent of the land over which said road was constructed, together with a space 100 feet on each side of the center of said road, for railroad purposes, whenever and to the extent necessary for the operation of its trains or the performance of its duties and obligations to the public as a common carrier.

Further, plaintiffs contend that the trial judge erred in allowing defendant's motion for judgment as of nonsuit because there is testimony in the record that defendant parked one of its trucks 125 feet from the center of the railroad track (which is admittedly beyond the right of way claimed by defendant), and that the entry upon the land of plaintiffs was unauthorized.

Any unauthorized entry on land in the actual or constructive possession of another constitutes a trespass, irrespective of degree of force used or whether actual damage is done. Such entry entitled the aggrieved party to at least nominal damages. *Schafer v. R. R.*, 266 N.C. 285, 145 S.E. 2d 887; *Letterman v. Mica Co.*, 249 N.C. 769, 107 S.E. 2d 753; *Matthews v. Forrest*, 235 N.C. 281, 69 S.E. 2d 553; *Whitley v. Jones*, 238 N.C. 332, 78 S.E. 2d 147.

Considering the evidence in the light most favorable to plaintiffs, as we are required to do on motion for nonsuit, and construing the pleadings in the light most favorable to plaintiffs, there appears to be sufficient evidence to carry the case to the jury, although the damages shown would seem to be only nominal.

For reasons stated, we hold that the trial judge erred in granting defendant's motion for nonsuit.

Reversed.