FRED PAUL WOODY v. CATAWBA VALLEY BROADCASTING COMPANY.

(Filed 12 January, 1968.)

**1. Libel and Slander § 2—**

A false charge that one has been arrested for a crime is libelous *per se*.

**2. Same—**

Words imputing a violation of the liquor laws are actionable *per se*.

**3. Libel and Slander § 14—**

Plaintiff's evidence was to the effect that a news broadcast over defend-
ant's radio station recited that plaintiff had been arrested by Federal
agents and charged with violation of the prohibition laws, that plain-
tiff's wife notified defendant that plaintiff was on a business trip in an-
other state at the time of the alleged offense and requested that the pub-
lication not be repeated, that defendant refused to withdraw the item
unless the agents repudiated the story, and that the publication was re-
peated that evening. *Held:* The evidence is sufficient to be submitted to
the jury in plaintiff's action for libel.

**4. Same—**

Evidence relating to the making of a retraction or an apology is a
matter of defense and is not to be considered on motion to nonsuit in an
action for libel or slander.

**5. Libel and Slander § 16—**

Punitive damages are not recoverable as a matter of right in an action
for libel or slander but may be awarded as punishment for intentional
acts which are wanton, wilful and in reckless disregard of plaintiff's rights.

APPEAL by plaintiff from *Riddle, S.J.,* April 17, 1967 Civil Ses-
sion, CATAWBA Superior Court.

In this civil action, the plaintiff, in short summary, alleged: He
is a citizen and resident of Burke County. The defendant is a cor-
poration operating a radio broadcasting station located in Hickory.
Its broadcasts are heard throughout Catawba, Burke and other
nearby counties.

At 12:30 p.m., May 11, 1966, the defendant, over its station,
broadcast this announcement: "A Hildebran man, Fred Paul Woody,
was reportedly arrested last night by A. T. T. U. agents in Meck-
lenburg County and charged with violation of the prohibition laws.
Woody was allegedly picked up in a 1954 Chevrolet containing 140
gallons of illicit liquor." The plaintiff's wife, hearing of the broad-
cast, and ascertaining her husband was on his freight run to Penn-
sylvania, so advised the defendant and requested that the item not
be repeated. Notwithstanding the advice, request and information
that the plaintiff was not involved, the defendant repeated the an-
nouncement at its 6:00 p.m. broadcast. These broadcasts were false
and defamatory. The second was malicious and the result of gross

negligence after the defendant was put on notice the charges were false, and a careless and reckless indifference to the plaintiff's rights. The plaintiff's good character and reputation were injured and he was humiliated and damaged by the false broadcast. Although the defendant was informed the charges were false, notwithstanding that information, repeated the broadcast charging that the plaintiff was transporting 140 gallons of illicit liquor — a felony under the federal laws and a misdemeanor under state laws.

The plaintiff served notice and demand for correction, etc. as required by G.S. 99-1(a)(b); neither retraction nor apology was offered. A copy of the demand was attached to the complaint.

The defendant filed answer, admitting broadcasting the item quoted above, both at its 12:30 and 6:00 p.m. broadcasts. The answer contained this admission: "X. It is admitted that the statement contained in said broadcasts concerning the plaintiff was not true." The defendant alleged "that the defendant's action in broadcasting said statement was due to a natural and honest mistake" and upon ascertaining the mistake, the defendant, in four subsequent broadcasts, made "a full and fair correction, apology and retraction". The parties stipulated:

> "5. That on May 11, 1966, at or around 12:30 p.m., an agent or employee of the defendant, acting within the scope and course of his agency or employment, broadcast over defendant's radio station in the course of its regular operation the following announcement:
>
> *       *       *
>
> 6. In addition to the broadcast covered by Stipulation No. 5, another identical broadcast was made by an agent or employee of the defendant, acting within the scope and course of his agency or employment and in the regular operation of the defendant's radio station at or around 6:00 p.m. on May 11, 1966, and that this was the only subsequent broadcast of the message."

The plaintiff introduced copy of the defendant's correction of the error:

> "Yesterday, you heard a news story on this station that a Hildebran man, Fred Paul Woody, had allegedly been arrested by A. T. T. U. agents in Mecklenburg County on violation of prohibition law charges.
> Today we were able to reach the officer in Charlotte, who was involved in the case, and found that THIS IS NOT TRUE. The Charlotte A. T. T. U. agent said that a car, bearing a license

tag listed to Fred Paul Woody, was stopped and 140 gallons of liquor was confiscated.

The officer further stated, however, that no arrests were made and the tag was apparently stolen from Mr. Woody's car, while parked in Cherryville where he works.

As a result of further investigation, we have learned that Mr. Woody was in Pennsylvania, at the time, and knew nothing of the liquor or the car, which was stopped."

The plaintiff's wife testified a friend called her and repeated the news broadcast. She called the plaintiff's employer, Carolina Freight in Charlotte. She was told the plaintiff checked out at 9:00 on May 10 and was on the road. Thereafter, she called the defendant:

"I called the WHKY office and got Mr. Whitener on the telephone at about 4:15 or 4:30. I asked Harold, I told him what Mrs. Buchanan had said. I asked him if he knew anything about it. He said, 'Let me go get the paper.' The news was on that day. He got the paper and he said, 'Here is something about it.' He didn't even connect it with Fred at the time. I asked him to read it to me, and he read it to me. I asked him to read it to me, so he did. And I kept saying over and over, 'Well, I don't understand it.' And I definitely told him Fred was in Pennsylvania, I did not say he is supposed to be. I knew definitely he was not hauling the whiskey. I said, 'Please don't report that, Harold, until you know something definite.' Harold said, 'I have to report it.' I said, 'Well, who could I call to find out anything about it.' I said 'Could I call Sheriff Oakes?' And he said that I could call. He did not know whether he would know anything. He said, 'If you call the A. T. T. U. office in Charlotte or some reliable source calls me and tells me that this is not true, I won't report it any more; otherwise I have to.' And that was all that was said.

Thereafter, I did listen to the radio at 6:00 and I did hear it broadcast. I was in my car and heard it, I definitely remember. I don't remember word for word because that is hard to do. I definitely remember the last sentence, and I do not remember them saying 'allegedly' and 'reportedly' anywhere in it. They could have. I don't know, but I remember in the last sentence it said Woody was taken into custody, arrested and taken into custody."

At the close of the plaintiff's evidence, the Court granted defendant's motion for nonsuit. From the judgment dismissing the action, the plaintiff appealed.

*James O. Cobb, William H. McNair, G. Hunter Warlick for plaintiff appellee.*

*Patrick, Harper & Dixon by Bailey Patrick and Charles D. Dixon for defendant appellant.*

HIGGINS, J. The pleadings and the evidence in this case disclose the news broadcast here involved was first written and later read over the defendant's radio broadcasting station at 12:30 p.m. The broadcast recited the plaintiff was reportedly "arrested last night by A. T. T. U. agents in Mecklenburg County and charged with violation of the prohibition laws. Woody was allegedly picked up in a 1954 Chevrolet containing 140 gallons of illicit liquor." The defendant argues it was justified in broadcasting the news item by reason of the fact the officers in Charlotte had seized a 1958 Mercury automobile whose driver escaped and was not identified. The Mercury evidently carried a license tag which had been stolen from the plaintiff's automobile, the theft reported to the Motor Vehicles Department, and replacement issued months before May 11, 1966.

After the 12:30 publication, plaintiff's wife ascertained plaintiff was on a freight run to Pennsylvania. She so notified the defendant and requested the publication not be repeated. She was told by the agent in charge that if she would get in touch with the officers in Charlotte and have them make a correction, or repudiate the charge, it would be withdrawn from further broadcast, but in the absence of such correction, the broadcast would be repeated. Plaintiff's wife was unable to contact the officers and have them get in touch with the defendant. The defendant repeated the broadcast at 6:00 p.m. This second publication is the gist of the plaintiff's cause of action.

The news item involved plaintiff's arrest by federal authorities for the unlawful possession and transportation of 140 gallons of illicit liquor. 26 U.S.C.A., § 5205(a)(2) makes it unlawful to transport, possess, buy, sell, or transfer any distilled spirits until the container has affixed thereto a tax stamp showing the internal revenue tax has been paid. § 5605 provides for a fine not to exceed $10,000, or imprisonment for not more than five years, or both, for the offense. § 7302 provides for the forfeiture of the vehicle used in the transportation. U.S.C.A., Title 18, § 1 provides: "1. Offenses Classified. Notwithstanding any act of Congress to the contrary (1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony."

A charge that one has been arrested for a crime is libelous, *per se,* if false. *Lay v. Publishing Co.,* 209 N.C. 134, 183 S.E. 416. Words

imputing a violation of the liquor laws are actionable *per se. Lynch v. Lyons,* 303 Mass. 116, 20 N.E. 2d 953; 53 C.J.S., Libel and Slander, § 96; *Lancour v. H & G Ass'n.,* 111 Vt. 371, 17 A. 2d 253, 132 A.L.R. 486; 33 Am. Jur., Libel and Slander, § 9. After notice that plaintiff was not involved, the responsibility of verifying the charge would seem to rest on the defendant — to make the verification before it repeated the broadcast.

The question here is whether plaintiff's evidence made out a case for the jury. At this stage, we need not concern ourselves with the question whether the defendant answered plaintiff's demand for the publication of a correction, retraction and apology. These are matters of defense. The burden of establishing them rests on the defendant. They arise only if the plaintiff has made out his case for the jury. *Roth v. News Co.,* 217 N.C. 13, 6 S.E. 2d 882.

The plaintiff's evidence was sufficient to require its submission to the jury on the issues raised by the pleadings. While punitive damages are not recoverable as a matter of right, sometimes they are justified as additional punishment for intentional acts which are wanton, wilful, and in reckless disregard of a plaintiff's rights. We do not weigh the evidence. We discuss it here only to the extent necessary for our decision on the questions of law and legal inference presented by the appeal. What the evidence proves or fails to prove is for the jury.

For the reasons assigned, the plaintiff's evidence made out a case for the jury. The judgment of involuntary nonsuit is

Reversed.