LIZZIE R. SUGGS, INDIVIDUALLY, THOMAS K. SUGGS AND CLARA S. WATTS, ATTORNEYS IN FACT FOR LIZZIE R. SUGGS v. ALMA CARROLL, LUCILLE S. INMAN, AND PHYLLIS LONG

No. 8513SC79

(Filed 3 September 1985)

1. Trial § 3.2— absence of one defendant—denial of continuance

The trial court did not err in denying defendants' motion for a continuance because of the unavailability of one defendant at the beginning of trial where the attorney for the absent defendant was aware of a conflict four weeks prior to trial, no affidavit in support of the motion to continue was submitted to the court, and such defendant did appear and testify in the afternoon of the second day of the trial.

2. Evidence § 27— contents of tape recording—qualification of witness

A witness was qualified to testify as to the contents of a tape recording, although part of the tape was made in his absence, where he had earlier heard the tape during a competency hearing.

3. Trespass §§ 7, 8— sufficient evidence of wrongful trespass—insufficient evidence of actual damages

The evidence was sufficient to support a verdict that defendants wrongfully trespassed on plaintiff's property where it tended to show that, although defendants' initial entry into plaintiff's home was peaceful and authorized, they thereafter refused to leave after plaintiff specifically requested them to do so. While plaintiff was entitled to at least nominal damages for the trespass, testimony of several laymen who described plaintiff's physical symptoms following the trespass was insufficient to support the jury's finding that plaintiff suffered an actual injury and its award of $1,200 in compensatory damages to plaintiff.

4. Damages § 11.1; Trespass § 8— punitive damages for trespass—sufficient evidence

The evidence was sufficient to support an award of punitive damages for trespass where it tended to show that defendants lacked good faith in in-

stituting a lunacy proceeding against plaintiff, their mother; during a visit to plaintiff's home defendants repeatedly refused to leave when requested to do so and failed to leave when it became clear that their presence was greatly upsetting plaintiff; and defendants spoke to plaintiff "kind of loud and a little bit angry" and attempted without permission to record her conversation.

APPEAL by defendants from *Clark (Giles R.), Judge.* Judgment entered 19 October 1984 in Superior Court, COLUMBUS County. Heard in the Court of Appeals 14 August 1985.

This is a civil action wherein plaintiff Lizzie R. Suggs seeks to recover compensatory and punitive damages for an alleged trespass by defendants and an alleged abuse of process by reason of defendants' institution of lunacy proceedings against her.

At trial, plaintiff introduced evidence tending to show the following: Apparently dissatisfied with plaintiff's division of her real property among her relatives, five of her children and grandchildren instituted a proceeding to have plaintiff declared incompetent, thus voiding her executed deeds. Plaintiff had heard of the proceeding before receiving legal notice of it, and according to her complaint, was "very irritated and mad with the parties who attempted to have her declared incompetent." On 31 January 1982, defendants visited plaintiff in her home. At some point during the visit, plaintiff Clara Watts, a daughter of Lizzie Suggs who was living with and caring for her, discovered that defendant Lucille Inman was attempting to record the conversation. Plaintiff Watts immediately ordered defendants out of the house but they refused to leave. She left the house to find her brother, plaintiff Thomas Suggs. During her absence Lizzie Suggs twice requested defendants to leave, and they refused again. Plaintiff Watts returned with her brother, who forcibly ejected defendants by striking them with a mop handle. Plaintiff Lizzie Suggs testified that after learning that defendants were attempting to record her conversation she became nervous and upset. Plaintiffs Thomas Suggs and Clara Watts both noticed that Lizzie Suggs was gasping for breath, unable to speak, perspiring heavily, and blue around the mouth. She was taken to the hospital where she remained three days.

Defendants introduced evidence tending to show the following: Having heard that plaintiff was concerned about the nature of the pending lunacy proceeding, defendants visited her to ex-

plain that the purpose of the proceeding was not to have plaintiff committed but to appoint an independent guardian for her affairs. Defendant Lucille Inman had at one time held a general power of attorney for Lizzie Suggs which had been partially revoked prior to her visit. Subsequent to the visit, Lizzie Suggs revoked the remainder of Lucille's power of attorney and granted a full general power to Thomas Suggs and Clara Watts jointly. Lucille testified that she took the tape recorder to Lizzie's house "[t]o protect myself from being accused of saying things to her that, you know, that I didn't say. I wanted to prove, you know, have record of what I said so I could—for my own protection." Each defendant testified that Lizzie had not asked them to leave and had spoken quietly to them until Thomas arrived. Defendant Alma Carroll also testified that approximately three days after the incident she saw Lizzie at Warner's Grill and "she seemed to be in pretty good shape."

Phyllis Long was dismissed as a defendant at the beginning of trial. At the close of plaintiff's evidence, the two remaining defendants' motion for a directed verdict in the abuse of process action was granted. A similar motion in the trespass action was denied. That cause of action was submitted to the jury on the following issues and answered as indicated:

(1) Did the defendant, Lucille S. Inman, commit a wrongful trespass on the property of the plaintiff, Lizzie R. Suggs?

ANSWER: Yes.

(2) Did the defendant, Alma S. Carroll, commit a wrongful trespass upon the property of the plaintiff, Lizzie R. Suggs?

ANSWER: Yes.

(3) If so, what amount of actual damages, if any, is the plaintiff, Lizzie R. Suggs, entitled to recover as a result of said trespass?

ANSWER: $1,200.00.

(4) In your discretion, what amount of punitive damages, if any, should be awarded the plaintiff, Lizzie R. Suggs, from the defendant, Lucille S. Inman?

ANSWER: $5,000.00.

(5) In your discretion, what amount of punitive damages, if any, should be awarded the plaintiff, Lizzie R. Suggs, from the defendant, Alma S. Carroll?

ANSWER: $5,000.00.

From a judgment entered on the verdict, defendants appealed.

*Marvin J. Tedder and Lee, Lee & Meekins, by Fred C. Meekins, Jr., for plaintiffs, appellees.*

*McGougan, Wright & Worley, by O. Richard Wright, Jr., for defendants, appellants.*

HEDRICK, Chief Judge.

[1] Defendants first assign error to the denial of their oral motion to continue the case because of the unavailability of one of the defendants at the beginning of the trial. It is a well-established rule in North Carolina that granting a motion for a continuance is within the discretion of the trial court. Continuances are not favored, and the party seeking a continuance bears the burden of showing sufficient grounds. *Shankle v. Shankle*, 289 N.C. 473, 223 S.E. 2d 380 (1976). The record in the present case discloses that when the case was called for trial defendants made a motion to continue because defendant Alma Carroll would not be available at the beginning of the trial. The record also discloses that Mrs. Carroll's attorney was aware of the conflict some four weeks prior to trial, no affidavit in support of the motion to continue was submitted to the court, and Mrs. Carroll did appear and testify late in the afternoon of the second day of trial. We hold that defendants have failed to show any substantial prejudice to their rights. This assignment of error is without merit.

Defendants next assign error to the trial court's admission of testimony by several witnesses in the form of an opinion as to the competence of Lizzie Suggs. The testimony regarding competence, admissible or not, is irrelevant to the dispositive issue of whether a trespass occurred. Additionally, the abuse of process claim was dismissed at the close of plaintiff's evidence. Because this claim was decided in defendants' favor, the disputed testimony is clearly non-prejudicial.

[2]   Defendants next assign error to the trial court's admission of plaintiff Thomas Suggs' testimony regarding the content of the tape recording. Defendants argue that Thomas Suggs did not have direct personal knowledge of the contents of the tape since part of it was made in his absence. The record discloses that Thomas Suggs had earlier heard the tape during the competency hearing. Thus he had the requisite first-hand knowledge to testify as to its contents. This assignment of error is without merit.

[3]   Defendants next assign error to the denial of their motions for a directed verdict and for judgment notwithstanding the verdict. Their first argument is that the evidence is not sufficient to support the verdict that defendants wrongfully trespassed on the property of plaintiff. "Any unauthorized entry on land in the actual or constructive possession of another constitutes a trespass, irrespective of degree of force used or whether actual damage is done." *Keziah v. R.R.*, 272 N.C. 299, 311, 158 S.E. 2d 539, 548 (1968). In the present case there is evidence that plaintiff was in actual possession of the house when defendants came to visit her. Defendants contend that they cannot be trespassers because their entry was authorized. They note that their entry was "in the usual routine manner" and that no trouble began until sometime after they entered the house. Our Supreme Court has held that

> [e]ven if the entry is peaceable, or by the express or implied invitation of the occupant, still if after coming upon the premises the defendant uses violent and abusive language and does acts which are calculated to produce a breach of the peace . . ., he is guilty of forceable trespass, because although not a trespasser in the beginning, he becomes a trespasser as soon as he puts himself in open opposition to the occupant of the premises.

*Anthony v. Protective Union*, 206 N.C. 7, 11, 173 S.E. 6, 8 (1934). When the evidence is considered in the light most favorable to plaintiff, it is clearly sufficient to permit the jury to find, as it did, that defendants wrongfully trespassed on the property of plaintiff. Although defendants' initial entry was peaceful, they became trespassers when they refused to leave after plaintiff specifically requested they do so. This argument is without merit.

Defendants next argue that the evidence is not sufficient to permit the jury to find, as it did, that plaintiff suffered any injury

entitling her to compensatory damages. In *Hatchell v. Kimbrough*, 49 N.C. 163, 165 (1856), our Supreme Court held that a plaintiff could properly recover for "any consequence which naturally flows from an unlawful act. . . ." Justice Pearson in writing for the majority stated that "As the loss of the plaintiff's eye is found by the jury to have been the direct and immediate consequence of [defendants' trespass], it was clearly proper that it should be considered in aggravation of damages." *Id.* (Citation omitted.) It is also the rule that in a successful claim for wrongful trespass the plaintiff is entitled to nominal damages at least. *Lee v. Lee*, 180 N.C. 86, 104 S.E. 76 (1920). In the present case since we have held that the evidence is sufficient to support the jury's verdict on wrongful trespass, it follows that plaintiff is entitled to at least nominal damages. However, we must examine the evidence to see if it is sufficient to support the $1,200 award for compensatory damages. Resolution of this question depends on whether there is sufficient evidence to enable the jury to find that plaintiff suffered any injury whatsoever. Our Supreme Court noted in *Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E. 2d 753, 760 (1965), that "[w]here a layman can have no well-founded knowledge and can do no more than indulge in mere speculation (as to the cause of a physical condition), there is no proper foundation for a finding by the trier without expert medical testimony." (Citations omitted.) The record in the present case reveals that plaintiff's only evidence regarding her condition was the testimony of several laymen who described her physical symptoms following the January 31 argument. While this information may have been helpful to a medical expert attempting to diagnose plaintiff's condition, it is clearly insufficient to support the jury's finding that plaintiff suffered an actual injury. Because there is no evidence in the record to show what injury, if any, the plaintiff suffered, the jury's finding must have been based on "mere speculation." There is no evidence to support the $1,200 award for compensatory damages and that part of the judgment entered on the verdict must be vacated.

[4] Finally, defendants contend that the evidence is not sufficient to support the award for punitive damages. Our Supreme Court has noted that

> The rationale permitting recovery of punitive damages is that such damages may be awarded in addition to compensa-

tory damages to punish a defendant for his wrongful acts and to deter others from committing similar acts. A civil action may not be maintained solely for the purpose of collecting punitive damages but may only be awarded when a cause of action otherwise exists in which at least nominal damages are recovered by the plaintiff.

*Shugar v. Guill*, 304 N.C. 332, 335, 283 S.E. 2d 507, 509 (1981). "While punitive damages are not recoverable as a matter of right, sometimes they are justified as additional punishment for intentional acts which are wanton, wilful, and in reckless disregard of a plaintiff's rights." *Woody v. Broadcasting Co.*, 272 N.C. 459, 463, 158 S.E. 2d 578, 581-82 (1968). Punitive damages may be awarded for a trespass which "is committed through malice, or accompanied by threats, oppression or rudeness to the owner or occupant." *Waters v. Lumber Co.*, 115 N.C. 648, 655, 20 S.E. 718, 720 (1894).

In the present case, the record discloses that the lunacy proceeding was brought not because defendants believed Lizzie Suggs insane, but because they hoped that familial relations would improve upon the appointment of an independent guardian. Lizzie Suggs heard about the proceedings, and as defendants could have anticipated, became upset. Defendants, thus knowing that Lizzie Suggs was upset, nevertheless planned and subsequently attempted to surreptitiously record her conversation. When Clara Watts, an occupant of the house, discovered the recorder and requested that they leave, defendants refused. Not being able to remove defendants from the house alone, Clara Watts then left seeking help. While she was gone, Lizzie Suggs twice asked defendants to leave and they again refused. Although in poor physical condition and unable to move about easily, plaintiff was on the verge of leaving when Clara returned with Thomas Suggs. Upon entering he immediately noticed that his mother "was sitting there just shaking, and she was blue around the face around her mouth. . . ." Despite her obvious physical distress, defendants yet again refused to leave, whereupon Thomas Suggs forcibly ejected them. Lizzie Suggs was then taken to the emergency room, where a number of her children gathered, and where a further disturbance occurred.

In the present case plaintiff's evidence is clearly sufficient to support the jury's award of punitive damages. Defendants, by

their own testimony, indicated they lacked good faith in instituting the lunacy proceeding. During the visit they repeatedly refused to leave when requested to do so, and also failed to leave when it became clear that their presence was greatly upsetting their mother. They spoke to their mother "kind of loud and a little bit angry" and without permission attempted to record her conversation. These facts taken as a whole demonstrate behavior that is sufficiently malicious, oppressive, and rude to support the jury's award of punitive damages. This assignment of error is without merit.

Because of our disposition of the issue relating to damages for plaintiff's personal injury, we find it unnecessary to discuss defendants' remaining assignments of error. The result is: that portion of the judgment awarding plaintiff $1,200 compensatory damages is vacated. That portion of the judgment awarding plaintiff $5,000 in punitive damages from each defendant is affirmed.

Vacated in part; affirmed in part.

Judges WEBB and WELLS concur.